[S. F. No. 1756.   In Bank. — August 12, 1901.]

THOMAS E. HALLINAN, a Minor, by EDWARD J. LINDEN, JR., his Guardian, Appellant, v. W. R. HEARST et al., Respondents.

TRUST — SUPPORT OF FAMILIES OF DECEASED FIREMEN — SUBSCRIPTIONS OBTAINED BY NEWSPAPER — DISCRETION OF TRUSTEE. — The proprietor of a newspaper, who contributed money and received subscriptions through a published call in the newspaper for the support of the families of deceased firemen, thereby became the voluntary trustee of a private trust, vested with large discretionary powers in determining who composed the families to be benefited, and in what proportions the funds were to be distributed among them. The exercise of his discretion will not be interfered with, except in case of gross abuse.

ID. — OBJECT OF TRUST DETERMINED BY PUBLISHED CALL — REPORT OF COMMITTEE — FUNDS APPORTIONED FOR MINOR — SUPPORT DURING MINORITY. — The object and purposes of the trust are to be determined wholly by the published call for the subscription, and not by the report of a committee appointed to apportion the funds. Funds raised for the support of the families of deceased firemen, which were apportioned in part by the committee in aid of a minor beneficiary, cannot be locked up so as not to be applied to his support during minority.

ID. — DISPOSITION OF FUND IN EVENT OF MINOR'S DEATH. — So long as there are families of deceased firemen to be supported as provided in the published call, the money apportioned separately for a minor cannot be disposed of in the event of his death, by being given over to the Fire Department Charitable Fund Association. [Beatty, C. J., *contra.*]

ID. — ACTION BY GUARDIAN OF MINOR — POSSESSION OF TRUST FUND. —
The general guardian of a minor beneficiary, who is not appointed
by the court as a trustee, cannot, as such guardian merely, main-
tain an action, either at law or in equity, to recover from the trustee
the possession and control of the trust property apportioned for the
support of the minor. [Temple, J., dissenting.]

ID. — ACTION IN EQUITY TO ENFORCE TRUST. — The guardian may main-
tain an action in equity, on behalf of the minor beneficiary to en-
force the trust according to its terms, and to have a trustee or
trustees appointed to fill a vacancy in the trust.

ID. — FINDINGS — RESIGNATION OF TRUSTEE — RECOGNITION OF COMMITTEE
AS TRUSTEES — PARTIES — AMENDMENT OF ANSWER. — Where the
court found that the newspaper proprietor resigned his trust in
favor of the committee, who were recognized by the court as trus-
tees, and commended for the efficient performance of their dut·es
as trustees, they should be brought in as parties before final judg-
ment; and where such findings, if true, were inconsistent with the
answer of the newspaper proprietor, who claimed therein the control
and management of the trust property, the answer should be
amended accordingly.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

Ben B. Haskell, for Appellant.

Garret W. McEnerney, for Respondent W. R. Hearst.

HENSHAW, J. — On June 6, 1897, three members of the
fire department of the city and county of San Francisco were
killed in the discharge of their duties. The defendant Hearst,
proprietor of the San Francisco Examiner, contributed money
to relieve the necessities and to support the dependent
families and relatives of the dead firemen, and made appeal,
through the columns of his paper, to the public of San Fran-
cisco for like contributions. The result of his efforts was the
collection, upon September 10, 1897, of the sum of $5,940.25.
He thereupon referred the question of the apportionment and
disposition of this money to the mayor of the city, the chief of
police, and the chief of the fire department. This committee
divided the money into thirds, and apportioned one third to
this minor plaintiff, — the only son of one of the deceased fire-
men, — and recommended that the amount awarded to him
should be deposited, "in trust, with one of the trust companies

organized under the laws of the state of California, and located in this city, to be paid to him on his coming to legal age, and in case of his death before his majority, the amount so awarded to be paid to the San Francisco Fire Department Charitable Fund Association, whose object is to defray the expenses of the burials of deceased members, and pay any weekly benefits to persons when sick, disabled, or unable to follow their usual vocation, which society is composed of the members and ex-members of the regular San Francisco fire department."

The plaintiff in this action, by his general guardian, seeks a recovery of the sum so allotted and apportioned to him. For answer to the complaint the defendant set up fully the facts and circumstances attending the collection of the money, and the disposition and award made of it by the officers of the city, to whom the matter had been referred. The court found that the money had been subscribed and collected by the defendant for the purpose of properly caring for and supporting the families of the deceased firemen, and that after the collection the defendant had fixed the proportions and terms upon which the money should be distributed, and had appointed James D. Phelan, mayor of San Francisco, Dennis T. Sullivan, chief of the fire department, and Patrick Crowley, formerly chief of police, trustees of said fund, to divide it amongst the persons for whose benefit it had been collected, and that ever since the collection, and down to and at the time of the commencement of this action, the three trustees last named had held said funds, in trust, for the uses and purposes stated. The court also found that the trustees had deposited the amount awarded to this plaintiff in a reliable and secure trust company of the city and county of San Francisco, upon the trust and with directions to pay the amount coming to said minor plaintiff herein upon his arrival at legal age, and in case of his death before majority, the amount so deposited, with its accumulation, was to be paid to the San Francisco Fire Department Charitable Association. It further found that this was a legal trust, and that it was being legally administered, and that it should be enforced by the court, upon the terms and conditions designated. By its decree the court authorized and empowered the trustees to apply to the court, from time to time, as in their judgment the best interests of the minor might require, for leave to withdraw from said trust fund such

sum or sums as might be necessary for his proper maintenance and support. Plaintiff was denied any further relief. From the judgment thus entered he appeals.

In combating the appeal, respondent first presents certain objections to the form of the action. These objections, however, are not urged with much insistence, the earnest desire of the defendant being to obtain a judicial declaration of his rights and duties as to the fund which he has collected, and judicial guidance in the disposition which he shall make of it. In passing these preliminary objections, therefore, it is sufficient to say that the pleadings as a whole present a case of equitable cognizance. At the call of the newspaper a generous public contributed moneys for the express purpose of relieving the necessities and supporting the families and dependent relatives of the dead firemen. Upon receiving these moneys, the defendant Hearst at once became a voluntary trustee of them, charged with the duty of devoting them to the indicated objects. Though the purpose was charitable, this trust was not, in its legal sense, a public trust or "charity." It was a private trust, but it was a private trust in which large discretionary powers were vested in the trustee. In no strict sense was there a trustor or creator of the trust. The object and purposes of the trust are to be found wholly in the published call to the sympathetic and generous-minded public to contribute to relieve the necessities of the dependent families and relatives of the deceased, and not at all in the report of the committee. In what proportions amongst these families and dependent relatives the moneys were to be distributed, and who composed such families and dependent relatives, were questions, in the first instance, to be determined by the defendant, and, except in case of gross abuse, a court would not interfere with such determination. (Civ. Code, sec. 2269.) In fact, the defendant asked for and received the suggestion of three well-known gentlemen, and heads of departments of the municipality, and adopted the apportionment which they suggested, — an apportionment which was certainly just and equitable; and, indeed, no point is here made against the award, the minor plaintiff seeking, however, to recover into his immediate possession and control, through his general guardian, the portion of the trust fund which was set apart to him.

I think it clear, however, that he has no right to such a re-

covery, and that the utmost of his right, as a beneficiary, is to ask an enforcement of the trust in accordance with the terms of its creation. · The funds that were set apart to him having been contributed to relieve his necessities and contribute to his support, he has an unquestioned right to demand that the moneys shall be devoted to these purposes, and that they shall not be locked up during his minority, while his necessities may be the greatest. This the court recognized in its decree, when it provided that the trustees might, from time to time, make application to be allowed to expend such sums as should be found necessary for the minor's maintenance. Objection may also be made to the provision that in the event of his death the remainder shall be given over to the Fire Department Charitable Fund Association. This might be a perfectly permissible disposition to make of the residue when the purposes of the trust shall have been accomplished, or when its object shall have failed by reason of the death of the beneficiaries; but since all the moneys were collected for the support of the families and dependent relatives of the dead firemen, these moneys could not be devoted to any other object, so long as there remained any such dependent relative.

Mr. Hearst, as appears by the findings, voluntarily surrendered his trust to the three trustees named, who accepted the trust, and who have since been efficiently managing it according to their understanding of its terms. Mr. Hearst had a perfect right to resign the trust, and it would then have become the duty of the court, in the first instance, to designate and appoint other trustees. (Civ. Code, sec. 2289.) This, in effect, though not in form, was done, for the court pronounces itself satisfied with the trustees, and commends them for their efficient performance of their duties. But, at the same time, before a binding judgment can be rendered in this case, the trustees themselves should be called in and made parties to the litigation. So, and so only, will the decree of the court be operative upon them. It may be that when advised that the terms of the trust are at variance with the suggestions contained in their report to Mr. Hearst, these gentlemen will decline to act, and it would then become the duty of the court to appoint some fit and proper person to administer the fund.

The general guardian of the minor, as such, has no right to the custody and management of this trust property. It is a

lawful trust for A to leave a fund to B, as trustee, for the maintenance and support of C during C's minority, and C's general guardian, merely by virtue of his position, would have no right whatsoever to the possession and management and distribution of the *corpus* of such a trust fund. It is for the trustees to manage the trust fund, under the directions of the court, paying for the maintenance and support of the minor such sums as may be necessary, paying them, indeed, to the general guardian of the minor, if the court should hold such to be the advisable course, and being protected in their payments by the order of the court. But, upon the other hand, if the execution of the trust be arrested for lack of a trustee, it is proper for the guardian to apply to the court to fill the vacant trusteeship, and the court, in the exercise of its powers, may appoint any fit and proper person, whether the guardian or another, to the vacancy. But if the guardian should be appointed, he would not take the trust property *as guardian*, but as trustee, under the explicit terms of the trust.

In contemplation of a reversal of the judgment, one other matter demands consideration. By the answer, defendant pleads no resignation of his trusteeship nor surrender of the trust, but avers that he is still in the custody, control, and management of the property. The findings of the court are as above set out,—namely, that the defendant resigned his trust to the three named trustees, who accepted the trust, and have been administering it according to their understanding of its terms. If the findings comport with the facts, the answer should be amended accordingly.

It is therefore ordered that the judgment be reversed, with instructions to the trial court to permit the pleadings to be amended, to call in such parties as it may deem necessary to a complete determination of the matter, and in particular the trustees of the fund set apart for the maintenance and support of the said minor plaintiff, and enter its decree appointing trustees and defining their powers and duties under the trust in accordance with this opinion.

Harrison, J., Van Dyke, J., and Garoutte, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment, and in the opinion of Mr. Justice Henshaw. I desire to say, however, that I am not at all convinced, personally, that the

action is anything other than an action at law for money had and received; and, as such, it could not be sustained. But nearly all the other members of the court have arrived at the conclusion that it may be treated as an equitable action, and it is quite apparent that some disposition must be made of the case upon that theory. I have concluded, therefore, to yield to the opinion of my associates on this point, as it is a pretty close one; and as there are differences, even on the theory of an equitable action, as to the proper disposition of the case, and as, upon that theory, I think that the views of Mr. Justice Henshaw are correct, I concur in his opinion.

BEATTY, C. J., concurring.—I concur in the judgment of reversal, but I fear that the directions as to the further proceedings in the case will lead to unnecessary complications and delays in the settlement of a controversy which, in the interest of all parties concerned, ought to be simply adjusted and speedily concluded. The directions to which I refer are based upon certain findings of the superior court upon matters wholly foreign to the case presented by the pleadings.

The substance of Mr. Hearst's answer is a statement of the amount received by him in response to his appeal for subscriptions to a relief fund, followed by these allegations: that he referred the question of a proper division and disposition of the fund to a committee composed of Mayor Phelan, Chief of Police Crowley, and Chief of Fire Department Sullivan; that they advised him to divide the fund into three equal portions,—to pay one portion to the adult dependents of Fireman Keller, and to deposit the remaining two thirds with a trust company, in trust, to be paid, one third to the infant sons of John Moholy on their coming of age, and the remaining third to this plaintiff upon his coming of age, and in case of the death of either of them before attaining his majority, the share allotted to him to be paid to the San Francisco Fire Department Charitable Fund Association; that he had adopted these recommendations as in every respect fair, equitable, and just; that he had paid over the one third, as recommended, to the representatives of Keller, and was only prevented by this litigation from depositing the other two thirds with a trust company, as in the award provided. There was no intimation in his answer that he had resigned his trust, or that he had any desire to devolve its execution upon Messrs. Phelan, Crowley,

and Sullivan, or any other person.   The only question he presented for the decision of the court was as to the conditions of the trust under which he held the money, and his only desire was to discharge himself of the obligations he had assumed by disposing of the funds in controversy in such manner as might be authorized by the judgment of the court, and such as would relieve him of further responsibility.   The finding of the court, therefore, to the effect that Mr. Hearst has turned over the money to Messrs. Phelan, Crowley, and Sullivan, and has attempted to devolve his trust upon them, is not only outside of the issues, but is inconsistent with the answer.   If it is true that plaintiff's share is still under the control of Mr. Hearst, the fact is important, as bearing upon the further proceedings in the case, for it dispenses with the necessity of bringing in new parties, and avoids the inevitable delays incident to that procedure.   Unless Mr. Hearst desires to amend his answer by showing that the fund has passed beyond his control, or by setting up some other fact essential to a proper and final decision of the case, there is no reason why a decree may not be entered upon the pleadings as they stand.

It is now held—and in that view I entirely concur—that the recommendation of the committee that plaintiff's share of the fund be deposited with a trust company, to be kept intact until his majority, was a mistake, because at variance with the intention of the donors and the purposes of the trust.   The trustee of the fund, it is held, must apply it, so far as necessary, to the support of the plaintiff during his minority,—that is to say, it must be devoted primarily to the provision of food, clothes, and other necessaries.   Such being the nature of the trust, all the parties necessary to a proper disposition of the case are now before the court.   I assume from the statements of counsel as to the non-residence of Mr. Hearst, that he cannot possibly undertake personally the duty of looking after the daily wants of this minor, and that he will desire to resign his trust in favor of some other trustee.   If so, a very simple amendment to his answer will serve every purpose, and if there is no reason to suspect the competency or integrity of plaintiff's general guardian,—of which there is no suggestion in this record, — I think it would be the plain duty of the court, as the case stands, to appoint him, not because he has any strict legal right, as guardian, to the custody of this fund, but because

plaintiff, as the beneficiary of the fund, having a right to ask for a trustee able and willing to discharge the trust, has, in effect, asked for the appointment of his general guardian, and because no one else able and willing to act has been proposed. In saying that the plaintiff has, in effect, asked for the appointment of his general guardian, I mean this: he asks a judgment for his share of the fund, and a judgment in his favor would be executed by turning the money over to his general guardian, who would hold it, under the law, upon a trust precisely the same as that upon which the defendant holds it, — a trust, that is to say, to use it for the support of the plaintiff during his minority, the surplus, if any, to be paid to him on his coming of age.

I do not concur in the view intimated in the opinion of Justice Henshaw, that the Moholy minors have any contingent interest in the fund here in controversy. I think the intention of the committee and of Mr. Hearst, in the division they made of the fund, partly executed as it was by payment of one share, was to sever the interests completely, and not to leave it open to the Moholy minors to question the disposition made of plaintiff's share, or to plaintiff to demand an accounting of the shares of the Moholys. A final and complete division among the several beneficiaries was not, in my opinion, at variance with the intentions of the donors of the fund, but, on the contrary, was the most equitable and judicious arrangement that could have been made. The views of the court, however, upon this point, as upon all others, must prevail, and if these various contingent interests exist (of the Moholy minors in plaintiff's share, and of plaintiff in their shares, and of the Fire Department Charitable Fund Association in all the shares), it would seem to be necessary to have one trustee, or set of trustees, of the whole fund, charged with the duty of looking after the needs of all the minors and preserving the interest of each in the shares of the others. It would also seem to be necessary to have all the parties before the court before a decree could be made defining the trust and prescribing the duties of the trustee. I think it unfortunate that this should be held necessary. It would certainly be a simpler and happier solution of the matter to hold the interests to be entirely distinct, and to intrust the respective shares of the minors to their several guardians, who, in performing the

duties imposed upon them by law, would exactly fulfill the purposes of this trust. And not only would this be the best rule for the present case, but it would make a good precedent for future cases. When a subscription is taken up for the relief of a number of persons—adults and minors—suddenly left in danger of privation by the death of those to whom they have looked for support, the fund ought to be made immediately available for the purpose of relief. The persons charged with the distribution of the fund ought to be at liberty to make a final division among the several beneficiaries, and they ought to be assured that they will be deemed to have discharged their trust fully and completely and beyond the reach of future question by payment of the shares allotted to minor beneficiaries to their respective guardians.

TEMPLE, J., dissenting.—I dissent. I am still unable to find, in the various appeals made to the public, in response to which the subscriptions were made, the terms of any trust sufficiently definite to be enforced, other than the general one that the money was for the benefit of the three families. That being so, the duty of Mr. Hearst was to pay the money to those families. He did not assume the duty of disbursing the funds for their benefit, and the court cannot put that burden upon him, and consequently cannot appoint a successor to do that. If Mr. Hearst had not already apportioned the fund, it would have been difficult for the court to have done so. Hence I think that power was necessarily in Mr. Hearst. I do not see how any beneficiary can question the division, and therefore, in my opinion, plaintiff is entitled to the money, uncharged with condition or trust.