128 Cal.App.2d 575 (1954)
Estate of KATHERINE FAULKNER, Deceased. ATTORNEY GENERAL, Appellant,
v.
WELLS FARGO BANK AND UNION TRUST COMPANY, as Trustee, etc., et al., Respondents.
Civ. No. 16162. 
California Court of Appeals. First Dist., Div. One. 
Nov. 8, 1954.
 Edmund G. Brown, Attorney General, and Wayne Hudson, Deputy Attorney General, for Appellant.
 William P. O'Brien and Tobin & Tobin for Respondents.
 BRAY, J.
 The attorney general appeals from an order of the superior court directing the testamentary trustee to distribute as intestate property 1/40 of the trust assets to the estate of the trustor's sister, May Sewell.
 Question Presented
 Where Alcoholics Anonymous of San Francisco refuses to accept a testamentary bequest to it, should the bequest be treated as intestate property or should the principle of cy pres be applied?
 Facts
 The will of Mrs. Katherine Faulkner established a trust, with life interest in May Sewell, and remainder over in certain proportions to nine different charitable organizations. Of these, Alcoholics Anonymous of San Francisco was given 1/40. That organization, following a policy of traditionally refusing bequests from nonmembers, voted "non-acceptance" *577 of the bequest. The testamentary trustee petitioned for instructions as to this portion of the trust estate. Respondent executor of the May Sewell estate answered, claiming that the bequest had failed and should be distributed as intestate property. The attorney general also answered, alleging the existence of all conditions prerequisite to the application of cy pres. He further alleged the existence of two other organizations whose purposes he claimed to be akin to those of Alcoholics Anonymous. He prayed distribution to either one of those or according to such scheme as the court might, in law, devise for effectuating the charitable intent of the testatrix.
 The court found that the bequest had failed, that cy pres should not be applied, and ordered the amount of the bequest distributed to the sister's estate, as intestate property.
 No brief has been filed by respondents, nor did respondents appear at oral argument.
 Was This a Charitable Bequest?
 Primarily, it must be determined whether a charitable trust was created at all, for, if not, cy pres cannot apply. The Restatement of Trusts, section 348, defines a charitable trust as follows: "A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." A charitable trust may be created by "(c) a transfer by will by the owner of property to another person to hold it upon a charitable trust." (Rest., Trusts, 349.) However, "A charitable trust is created only if the settlor properly manifests an intention to create a charitable trust." (Rest., Trusts, 351.) In comment (d) of section 351, the commissioners added: "If the transferee is authorized to dispose of the property in any manner or to any person he may select, he takes the property for his own benefit."
 There is language in the will which might be considered as negating a trust intent. Thus, the will provided: "Upon the death of my said sister, May Sewell, this trust shall cease and terminate, and all of the trust estate then in the hands of my trustee, subject to the settlement of said trustee's accounts, shall be distributed and paid by said trustee as follows: ..." (List of the nine charities followed.) And, two paragraphs further: "In the event that I should be predeceased by my *578 sister, May Sewell, or in the event that she should die before any distribution of my estate to my said trustee, in either of said events, I give and bequeath my entire estate directly to the charities above mentioned, free from any trust, in the proportions hereinabove set forth." (Emphasis added.)
 It would appear that in the contingencies mentioned the charities take as remaindermen, free from trust.
 [1] The test of a charitable trust is that it subjects "the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." [2a] Applying that test, in spite of the provisions of the will above quoted, it is inescapable that the intent of the testatrix in making these remainder bequests was to create charitable trusts. Every one of them was to a charitable organization--the American Cancer Society, University of California, to be used for osteo-arthritic research, Polio National Foundation, American Red Cross, Father Flanagan's Boys' Town, Guide Dogs for the Blind, Inc., San Francisco Tubercular Society, Children's Home Society, Alcoholics Anonymous. It is obvious that the testatrix desired her bequests to be used by the organizations mentioned, not for any specific purpose (except the University of California, and even there in the contingencies mentioned the specific purpose would not apply) but for the general, or any, purposes of the particular organization. [3] These organizations, being formed and conducted only for charitable purposes, the bequests come within the rule that "a devise to a society organized for a charitable purpose without a declaration of the use to which the gift is to be put is given in trust to carry out the objects for which the organization was created." (Estate of Clippinger, 75 Cal.App. 2d 426, 433 [171 P.2d 567]; In re Los Angeles County Pioneer Soc., 40 Cal.2d 852 [257 P.2d 1]; Estate of McDole, 215 Cal. 328 [10 P.2d 75].) [4] "If the owner of property devises or bequeaths it for charitable purposes and not only does not name a trustee but also does not use language indicating that the property is to be held upon trust, nevertheless a charitable trust will be created. In such a case the court will appoint a trustee to administer the trust." (Rest., Trusts, 397f.)
 [5] "In determining whether there has been expressed a general charitable intent, the trust instrument is always construed most strongly against the trustor, for the reason that the courts favor charities. Once it has been determined that the creator of the trust had a general charitable purpose, the *579 courts will presume that the creator of the trust did not desire the trust to fail." (O'Hara v. Grand Lodge I.O.G.T., 213 Cal. 131, 141 [2 P.2d 21].) [6] It is "the general rule that in case of doubt a gift must be interpreted in favor of a charity [citations] ..." (Estate of Loring, 29 Cal.2d 423, 435 [175 P.2d 524].)
 In In re Los Angeles County Pioneer Soc., supra, 40 Cal. 2d 852, the testatrix's will provided: "the Balance of my estate to be given to the Pioneer Society ..." The bequest had no express provision as to its use, nor was the bequest declared to be given in trust. The court said: "Pioneer erroneously assumes that the gift could not be for charitable purposes unless the instrument of gift expressly so provided. '[A] devise to a society organized for a charitable purpose without a declaration of the use to which the gift is to be put is given in trust to carry out the objects for which the organization was created.' " (Quoting Estate of Clippinger, supra, 75 Cal.App.2d 426, at 433.) The provision in the will in Estate of Clippinger, supra, was: "I give any balance there may be to the trustees of the Order of the Eastern Star Home at Rockford Illinois, in the names of ... [two members]." Again, no strings attached.
 In Estate of DeMars, 20 Cal.App.2d 514 [67 P.2d 374], testatrix left the residue of her estate to the poor soldiers of a certain United States Hospital. No trustee was appointed. The court held that a trust had been established and that said court had the power to appoint the Commanding Officer of the hospital as trustee.
 [2b] Here there is a paramount charitable intent, as the entire trust estate (after the termination of the life estate) is given to charitable organizations and for charitable purposes. As to the bequest to Alcoholics Anonymous, there is a charitable use in the classic sense, namely, the rehabilitation of alcoholics.
 Cy Pres
 [7] It being established that the bequest actually is a charitable one, it becomes the duty of the court, if possible, to apply cy pres.
 "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impractical or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail *580 but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." (Rest., Trusts, 399.)
 The court in Estate of Tarrant, 38 Cal.2d 42, 46 [237 P.2d 505, 28 A.L.R.2d 419], stated: "It is the policy of the law to favor gifts for charitable purposes, and a will providing such gifts will be liberally construed in order to accomplish the intent of the donor." There, the gift was to the pension fund of a railroad company. The gift failed as the company itself had no such fund. However, a veterans' association of the same railroad did. Cy pres was applied.
 Cy pres was applied in the following cases: Town of Brookline v. Barnes (1951), 327 Mass. 201 [97 N.E.2d 651]. A bequest to the town as a fund for establishing and maintaining a hospital. The town failed to accept. First Nat. Bank of Chicago v. Elliott (1950), 406 Ill. 44 [92 N.E.2d 66]. A bequest to a designated Catholic Sisterhood or designated alternative order for the founding and maintenance of an orphans' home. Neither of the orders would accept the bequest. The court said that the dominant object of the testator was to benefit orphans and not the designated orders. Fay v. Hunster (1950), 181 F.2d 289. Remainder to a local pastor for the establishment of a home for aged colored people. The pastor declined to accept. Noel v. Olds (1943), 78 App.D.C. 155 [138 F.2d 581] (cert. den. (1943) 321 U.S. 773 [64 S.Ct. 611, 88 L.Ed. 1067]). Bequest for the erection of an art gallery at Duke University Bequest refused. Richardson v. Mullery (1908), 200 Mass. 247 [86 N.E. 319]. Bequest to the life saving station to be built in Marblehead or Nahant. The United States refused to accept. Bankers Trust Co. v. New York Women's League for Animals (1952), 17 N.J.Super. 398 [86 A.2d 138]. Bequest to a named charitable organization for the purchase of a farm to be used for the care of animals. Bequest refused.
 While there is some distinction between the above cases and ours, in that in them in addition to the organizations being charitable ones, there was a statement of a definite trust, and in ours there are no specific instructions, nevertheless, as there, the purpose of the bequest is obvious,--namely, the rehabilitation of alcoholics. Within those limits the court can easily define duties for a trustee. The California cases, in effect, supply the trust intent. In a case involving a charitable corporation which was making changes in its charter, the Supreme Court said: "... property, which was acquired *581 when plaintiff's articles were limited to charitable purposes, was thereby impressed with a trust for such purposes, and if such property subsequently should be diverted to newly- declared nonexempt purposes, the attorney general would have the duty to bring appropriate proceedings to enforce the trust." (Pacific Home v. County of Los Angeles, 41 Cal.2d 844, 854 [264 P.2d 539].)
 See Restatement, Trusts, section 397f, supra, that where a bequest for charitable purpose is made, but neither a trustee named nor language used specifically, "the court will appoint a trustee to administer the trust."
 As pointed out in Estate of Loring, supra, 29 Cal.2d 423, 436, "The specific charitable purpose does not become impossible or impractical of fulfillment, however, simply because it cannot be carried out in the exact terms of the gift."
 In O'Hara v. Grand Lodge I.O.G.T., supra, 213 Cal. 131, the trust was to maintain an orphans' home, but that method of carrying out what the court found to be the intent of the trust, namely, "the general charitable purpose of aiding and assisting orphans" had "become reasonably impossible of performance, due to a change in conditions not foreseen at the time of the creation of the trust." (P. 140.) The court stated that such general purpose having been ascertained, it was the duty of the court "to apply the trust fund to the carrying out of that general purpose, even though so to do requires a change in the method or means specified in the trust instrument. This doctrine, frequently referred to as the cy pres doctrine, is in reality a mere matter of construction." (P. 141.) (Emphasis added.)
 [8] As it is clear here that the testatrix's specific intent was to aid alcoholics, all that is necessary is to appoint a new trustee. There are many organizations, any one of which could well act as such trustee.
 The order is reversed and the superior court is directed to appoint a trustee to carry into effect testatrix's evident desire to aid alcoholics, and to order the testamentary trustee to distribute to such trustee such funds as would otherwise have gone to Alcoholics Anonymous.
 Peters, P. J., and Wood (Fred B.), J., concurred.