16 Cal.App.3d 644 (1971)
94 Cal. Rptr. 295
Estate of HENRY W. GATLIN, Deceased
CROCKER-CITIZENS NATIONAL BANK, as Executor, etc., Petitioner and Respondent,
v.
FRANCES GATLIN YATES, Claimant and Respondent.
SAN FRANCISCO LIGHTHOUSE FOR THE BLIND et al., Claimants and Appellants.
THOMAS C. LYNCH, as Attorney General, etc., Objector and Appellant.
Docket No. 1241.
Court of Appeals of California, Fifth District.
April 13, 1971.
*646 COUNSEL
Crimmins, Kent, Bradley & Burns, Brobeck, Phleger & Harrison, Levinson & Edgeman, Ronald W. Edgeman and Robert Wesley Williams for Claimants and Appellants.
Thomas C. Lynch, Attorney General, and G.A. Strader, Deputy Attorney General, for Objector and Appellant.
Price, Martin & Crabtree and E. Dean Price for Claimant and Respondent.
No appearance for Petitioner and Respondent.
OPINION
GARGANO, J.
This is an appeal by several charitable organizations from a final decree of distribution distributing the entire estate of Henry W. Gatlin to decedent's daughter, his sole surviving heir at law. Also appealing is the Attorney General under his duty to protect charitable trusts "because of the parens patriae position of the state with respect thereto." (People v. Cogswell, 113 Cal. 129 [45 P. 270].)
The facts are undisputed. Henry W. Gatlin died testate on September 13, 1967. His holographic will dated September 29, 1953, named the *647 Crocker First National Bank as executor and bequeathed the sum of $1,000 to the decedent's daughter, Frances C. Gatlin. The residue of the decedent's estate was devised and bequeathed as follows: "... the Balance of my Estate to be equally divided between the home for the Blind and home for crippled children here in San Francisco, Calif."
On March 6, 1968, the Crocker First National Bank petitioned the probate court to determine heirship. The executor alleged that it was uncertain as to who was entitled to the distribution of the estate because the institutions referred to in the will could not be identified by the names used. Thereafter, the petition was set for hearing and notice thereof was given to respondent, to appellants, to the Shriner's Hospital for Crippled Children (not a party to this appeal), and to the Attorney General.
At the hearing on the executor's petition no extrinsic evidence was offerred by the parties to identify the homes referred to by the testator in his will; it was merely stipulated that no organizations could be found in the City and County of San Francisco meeting the descriptions used in the will. It was also stipulated that appellants were engaged in charitable services in San Francisco, that they were proper organizations to receive distribution of the testator's estate if it were determined that the gifts had not passed by intestate succession, and that any amount distributed to them would be allocated one-half to San Francisco Lighthouse for the Blind, one-sixth to Easter Seals, one-sixth to Children's Hospital and one-sixth to Shriner's Hospital for Crippled Children, with Lighthouse to act as trustee for the entire gift; the Attorney General did not participate in that part of the stipulation regarding the manner in which the charitable gifts should be distributed, apparently taking the position that if the gifts were upheld, it was the court's function to name the trustee.
(1) Because no extrinsic evidence was offered by any of the parties to clarify the latent ambiguity in the testator's will (Estate of Russell, 69 Cal.2d 200 [70 Cal. Rptr. 561, 444 P.2d 353]), we must look solely to its terms in an effort to ascertain the testator's intention; we are not, in short, bound by the trial judge's interpretation (Parsons v. Bristol Development Co., 62 Cal.2d 861, 866 [44 Cal. Rptr. 767, 402 P.2d 839]; Estate of Platt, 21 Cal.2d 343 [131 P.2d 825]). (2) Furthermore, no contention is made that the gifts the testator purported to make to the "home for the blind and home for crippled children here in San Francisco" are not charitable; the word "charity" in modern usage includes all humanitarian activities which are maintained for the care and well being of certain specified recipients and which make it less likely that they will become burdens of society (Fredericka Home v. County of San Diego, 35 Cal.2d 789 [221 P.2d 68]); *648 and a gift to an institution engaged in such humanitarian activities is a charitable gift even though there is no declaration in the will as to the use to which the gift is to be put (Estate of Faulkner, 128 Cal. App.2d 575, 578 [275 P.2d 818]). (3a) The sole issue, therefore, is this: Did the testator's charitable gifts lapse because the institutions referred to in his will cannot be identified by the names used, or should the cy pres doctrine be applied to carry out his manifested charitable purpose.
(4) Briefly, cy pres is an equitable power which makes it possible for a court to carry out a testamentary trust established for a particular charitable purpose if the testator has expressed a general charitable intent, and for some reason his purpose cannot be accomplished in the manner specified in the will (Estate of Tarrant, 38 Cal.2d 42 [237 P.2d 505, 28 A.L.R. 2d 419]); the court, to meet unexpected contingencies, directs the disposition of the property to some related charitable purpose in order to carry out the testator's intention as nearly as possible (Estate of Loring, 29 Cal.2d 423 [175 P.2d 524]).[1] The doctrine has been consistently applied to uphold gifts made to charitable institutions which do not accept them (Estate of Faulkner, supra, 128 Cal. App.2d 575). It has also been applied to uphold a gift to charity where the testator has not specified the precise charitable purposes to which his gift was to be applied or named a trustee to administer the gift (Estate of Quinn, 156 Cal. App.2d 684 [320 P.2d 219]). However, because of the deep-rooted belief that gifts should not be upheld merely to prevent intestacy, some courts have been reluctant to use the cy pres power to uphold gifts made to charitable institutions which do not exist or cannot be identified by the names used (Estate of Zilke, 115 Cal. App. 63 [1 P.2d 475]). Nevertheless, in Creech v. Scottish Rite Hosp. for Crippled Children, 211 Ga. 195 [84 S.E.2d 563], the Georgia Supreme Court brushed aside the artificial distinction and upheld a gift "to the Masonic Hospital of Georgia, for tubercular children," albeit there was no such legal entity in existence when the will was made. The court stated: "From a consideration of the entire will and codicil, it is apparent that the legacy `to the Masonic Hospital of Georgia, for tubercular children' was not intended for the benefit of any particular institution, but for the benefit of tubercular children as a class with the particular hospital named to perform the office of trustee....
"Where, as here, the manifest intention was to create a charitable trust *649 for tubercular children, and even though the charitable institution named never existed, the purpose and object for which the trust was created still exists and a legacy does not lapse, and cy pres doctrine applies."
The Creech rationale is the enlightened viewpoint. If the cy pres doctrine is applicable to a gift to a charitable institution which will not accept it (Estate of Faulkner, supra, 128 Cal. App.2d 575), and, further, if it is applicable to an outright gift to charity where the testator has not named a trustee (Estate of Quinn, supra, 156 Cal. App.2d 684), there is no sound reason for not applying the doctrine to a gift made to an institution the testator has stated is engaged in a named charitable activity merely because the institution cannot be identified by the name used so long as it is patent that his purpose in making the gift was to foster the charitable activity, not just to benefit the institution. (5) As our Supreme Court stated in Estate of Tarrant, supra, 38 Cal.2d 42, 46: "`Courts look with favor upon all attempted charitable donations, and will endeavor to carry them into effect if it can be done consistently with the rules of law. A bequest intended as a charity is not void, and there is no authority to construe it to be legally void, if it can possibly be made good.' (Estate of Hinckley, 58 Cal. 457, 513; Collier v. Lindley, 203 Cal. 641, 654 [266 P. 526]; Estate of Bunn, 33 Cal.2d 897, 903 [206 P.2d 635]; see 14 C.J.S. § 6a, p. 427.) (6) Since the enactment of the Statute of Charitable Uses in 1601 (43 Eliz. c. 4; 7 Pickering's Eng. Stats. p. 43), provisions for the `supportation, aid and help of young tradesmen, handicraftsmen and persons decayed' have been recognized as charitable in their design to `accomplish objects which are beneficial to the community.' (Rest., Trusts, § 368.) The scope of the word `charity' changes and enlarges with the needs of men and must advance with the progress of civilization so as to encompass varying wants of humanity properly coming within its spirit. (People v. Dashaway Assn., 84 Cal. 114, 122 [24 P. 277, 12 L.R.A. 1177]; Rest., Trusts, § 374.)"
(3b) We have concluded that the cy pres power should be exercised in this case even though the charitable institutions mentioned in the will cannot be identified with any degree of certainty. First, by directing that the bulk of his property be divided between two institutions engaged in comparable humanitarian activities, the testator expressed a broad charitable intent in relation to the named activities (Bogert, Trusts and Trustees (2d ed.) ch. 22, § 437). Second, it seems to us that if the institutions rather than the humanitarian activities were the testator's paramount concern, he would have named them by their proper titles instead of casually referring to each as a home; it stretches the imagination to believe that decedent did not know there were more than one haven for crippled children or for the blind in the metropolis of San Francisco. It follows, logically, that *650 decedent's underlying motivation in leaving his property to the "home for the blind and home for crippled children here in San Francisco" was to bring comfort and succor to the blind of San Francisco as a class and to the crippled children of San Francisco as a class, and that the "homes" referred to in the will were the means by which his laudable aims were to be accomplished; they were not the only objects of his bounty. Under these circumstances, the selection of any suitable organization or organizations located in the City and County of San Francisco to act as trustee or trustees to carry out the testator's purposes should suffice to attain his broad humanitarian objectives. (See Estate of Quinn, supra, 156 Cal. App.2d 684.)
Arguably, Estate of Zilke, supra, 115 Cal. App. 63, presents a narrower viewpoint than that expounded in this opinion. In that case the testator willed all of his property to the "Offens Home of San Francisco" and the court held that the gift lapsed because the beneficiary could not be identified with reasonable certainty.[2] However, it is axiomatic that each case must be decided on its own facts. In Zilke the testator left all of his property to one institution, indicating a more restricted charitable purpose than that expressed by the decedent in the instant case. Also, in Zilke the testator capitalized the word "Offens," suggesting an attempt to name the institution by its proper title and that he had only that institution in mind when he made his gift. In the instant case the decedent not only left his property to two separate charitable institutions, but he casually referred to each institution as a home without even capitalizing the word "home."
The judgment is reversed, and the superior court is directed to appoint a trustee or trustees to carry into effect the testator's evident desire to aid blind persons and crippled children of the City and County of San Francisco, in accordance with the views expressed herein, and to order the executor to distribute to such trustee or trustees such funds as otherwise would have gone to the institutions mentioned in the testator's will.
Stone, P. J, concurred.
NOTES
[1] As is said in the Restatement of Trusts, section 399: "If property is given in trust to be applied to a particular charitable purpose and it is or becomes impossible or impracticable or illegal to carry out that particular purpose, and if the settler manifested a general intent to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general intent of the settler."
[2] The court recognized the word "Offens" had been misspelled and that the testator meant the Orphans Home of San Francisco.