[Civ. No. 24136. Third Dist. Nov. 1, 1985.]

ROBERT E. McCARTHY, Plaintiff and Respondent, v.
WAYNE E. POULSEN et al., Defendants and Appellants;
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Collette & Erickson, John V. Erickson and Arthur D. Levy for Defendants and Appellants.

McCarthy, Flowers & Roberts, Ralston P. Roberts, Peter V. Shackter and Adrian G. Driscoll for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, Carole Ritts Kornblum, Assistant Attorney General, Peter K. Shack and William S. Abbey, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**SPARKS, J.**—This trust case poses the perplexing question of what the superior court should do when no one will consent to act as trustee of a charitable trust. Appellants Wayne E. and Gladys K. Poulsen established a charitable trust in 1974 to be known as the Poulsen Foundation. Respondent Robert E. McCarthy was named as trustee of the trust and he accepted the duties as trustee. The assets of the trust consisted primarily of land located in the mountainous region of Squaw Valley. A portion of the trust land slid downhill into a residential area in an ominous mudslide in the spring of 1983. The specter of law suits loomed. Shortly thereafter McCarthy decided

to resign as trustee, and despite efforts by the parties and the superior court, no one could be found who would consent to become the successor trustee. As a last resort, the trial court entered an order, over appellants' objections, appointing them as trustees, and directing them to execute the terms of the trust. The Poulsens contend that they cannot be compelled against their will to serve as trustees. We agree and shall reverse the order of the trial court and remand for further proceedings.

## FACTS

The Poulsen Foundation was established in August 1974, with an initial trust asset of $500. The declaration of trust provides that the trust shall be operated exclusively for religious, charitable, scientific and educational purposes, or for any such purposes. The Poulsens, as trustors, provided that no part of the trust fund, either income or principal, could inure to or in any manner be used for the benefit of the trustors or for any trustee, or for any private shareholder or individual. The trustee was given broad powers to use the trust assets for the purposes set forth. Upon termination or dissolution of the trust the entire trust estate was to be distributed for the purposes of the trust. The trust was irrevocable and unamendable, and was to terminate upon the distribution of the entire trust estate for the purposes of the trust.

Respondent McCarthy was named trustee. He accepted and undertook the duties of trustee. The trust provided that in the event he resigned or became unable or unwilling to serve then other named persons were designated as successor trustees. In September 1983, McCarthy resigned as trustee and tendered his trusteeship to the persons named as successor trustees. None of the persons named to serve as successor trustees accepted the tender of the trusteeship. This prompted McCarthy to petition the superior court for an order settling accounts and appointing a successor trustee, or in the alternative for the termination of the trust.

The reason the trusteeship of the Poulsen trust is so unpopular is clearly revealed in the record. The primary assets of the trust consist of three parcels of real property in Placer County. One parcel of property, containing about 105.63 acres, was deeded to the trust in 1974 by the Nature Conservancy, a nonprofit corporation of the District of Columbia. The Nature Conservancy made its gift subject to the condition that the property be maintained in its natural state as a nature preserve. A second parcel of property, containing about 118.6 acres, was deeded to the trust in 1974 by the Poulsens. A third parcel of property, containing about 29.02 acres, was also deeded to the trust by the Poulsens, this time in 1975. These parcels of property are adjoining, and are located in the Squaw Valley area of the

county, the site of the winter Olympic Games in 1960. The property adjoins a subdivision which had earlier been developed by the Poulsens. The property given the trust by the Nature Conservancy had earlier been given to that entity by the Poulsens. The trust estate consists entirely of this real property, except for some nominal bank accounts.

Throughout the period of McCarthy's trusteeship, the real property subject to the trust had been maintained in its natural state. In the spring of 1983, an earth movement (landslide or mudslide) caused by natural forces occurred on the trust property. An engineering report indicated that the occurrence was a natural geologic hazard due to the topography of the area. Further earth movements and snow avalanches were to be expected until such time as the area attains a position of natural stability. The report also indicated that any engineered stabilization of the area would be very costly.

The 1983 landslide caused damage to a number of homes in the adjoining subdivision. Moreover, the menace of future earth and snow movement posed a threat of future damage. In September 1983 a number of homeowners in the subdivision wrote to the trust and expressed the opinion that it would be responsible for future damages. The homeowners demanded to know what the trust intended to do to avert such a catastrophe. The Placer County Counsel also informed the trustee of his belief that the trust would bear full responsibility for all future damage. In light of this foreboding situation the trustee decided the better part of valor would be to resign. Despite numerous efforts, McCarthy was unable to find a successor. The trial court also spent a great deal of time attempting to find a successor trustee, again without success. As the court noted: "It is abundantly and irrefutably clear that the problems of potential liability arising out of almost certain future landslides have rendered the land somewhat less popular than a certain brown rodent of the Middle Ages." The state refused to accept the responsibility of trusteeship. The Attorney General suggested instead that the court appoint the Poulsens as trustees. While the Attorney General agreed that the trust property cannot revert to the possession of the Poulsens, he asserted that the trustors of a charitable trust have a reversionary responsibility to the charitable beneficiaries which would support the imposition of the duties of trustee upon them. The trustors informed the court that they were unwilling to accept the duties of trustee.

In its order the trial court accepted the resignation of McCarthy as trustee, and ratified, settled and approved his final account. The court denied his application for attorneys' fees, noting that while he had not been paid as trustee during his trusteeship, his law firm had been paid $30,958 as attorneys' fees and there remained only $700 in the trust accounts. The court declined to order the trust terminated or to consider the property to have

escheated to the state. The court found that the trustors had a residual obligation to act as trustee, and ordered that they accept such appointment and execute the terms of the trust. This inevitable appeal followed.

## DISCUSSION

■ We recognize the paradox which confronted the trial court. It is the universal rule that a trust will not fail for want of a trustee. (*Burns* v. *Peters* (1936) 5 Cal.2d 619, 622-623 [55 P.2d 1182]; *City of Oakland* v. *De Guarda* (1928) 95 Cal.App.270, 285 [272 P. 779]; Rest.2d Trusts, § 101, com. a, p. 229.) Where a trust exists without a trustee, it is the duty of the superior court to appoint a trustee and direct execution of the trust. (Civ. Code, §§ 2287, 2289.)[1] But as we have recounted, despite diligent efforts, no person could be found who would agree to serve as trustee, presumably because of the personal liability a trustee would incur for tort liability arising during the administration of the trust. (See *Longway* v. *Newbery* (1939) 13 Cal.2d 603, 616-619 [91 P.2d 110]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 100, p. 5460; Rest.2d Trusts, § 264, p. 8; see generally, Landslide and Subsidence Liability (Cont.Ed.Bar 1974).) Perceiving that it had no other alternative and in order to preserve the trust, the court ordered the trustors to serve as trustees.

On the other hand, it is also the universal rule in this country that a person may not be forced to be a trustee without his consent. (See Bogert, Trusts and Trustees (2d rev. ed. 1979) § 150, p. 78; 4 Powell on Real Property, § 511.1, pp. 84-85; Rest.2d Trusts, § 169, com. a, p. 363; and see 7 Witkin, *op. cit. supra,* Trusts, § 13, p. 5376; *Hallinan* v. *Hearst* (1901) 133 Cal. 645, 649 [66 P. 17]; *Smith* v. *Davis* (1891) 90 Cal. 25, 33 [27 P. 26].) Indeed, Civil Code section 2219 defines a trustee as a person who *voluntarily* assumes a relation of personal confidence with another. Thus, by statute, "a voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty: [¶] 1. His acceptance of the trust, or his acknowledgement, made upon sufficient consideration, of its existence; . . . ." (Civ. Code, § 2222.) ■ The so-called involuntary trusts created through the resulting trust and constructive trust doctrines are not to the contrary. In each of those cases the sole duty of the trustee is to convey the property to the beneficiary. (7 Witkin, *op. cit. supra,* §§ 123, 131, pp. 5481, 5487.) Thus, in each involuntary trust case the "trustee" remains such only for so long as he voluntarily retains the property and

---

[1]Civil Code section 2289 reads: "When a trust exists without any appointed trustee, or where all the trustees renounce, die, or are discharged, the superior court of the county where the trust property, or some portion thereof, is situated, must appoint another trustee, and direct the execution of the trust. The court may, in its discretion, appoint the original number, or any less number of trustees."

may divest himself of any duties by divesting himself of the property. ■ The parties have cited no authority, and we have found none, which would permit a court to impose the duty of trustee in a voluntary trust upon an unwilling person.

To escape this dilemma, the trial court imposed the obligation of trustee upon the Poulsens because of an undefined reversionary interest obligation as trustors, and out of concern that otherwise the duty might be forced upon the state. Neither of these reasons withstands scrutiny.

■ First, it is established that with respect to a charitable trust a right of reverter in the trustor will not be favored. (See *In re L.A. County Pioneer Society* (1953) 40 Cal.2d 852, 865-866 [257 P.2d 1].) Unless the trustor expressly retains the right of reverter in the declaration of trust, then the charitable purposes of the trust should be fulfilled even though the original purpose fails. (*Ibid.*) ■ In this case the Poulsens expressed the broadest possible charitable purpose in their declaration of trust and totally and completely divested themselves of any right or interest in the trust assets. By doing so they became strangers to the trust, and not even a scintilla of a right remained in them. (*O'Hara* v. *Grand Lodge I.O.G.T.* (1931) 213 Cal. 131, 139 [2 P.2d 21].) Consequently, they stand as members of the general public in relation to the trust. (Bogert, *op. cit. supra,* § 415, p. 448.) Accordingly they cannot be held to have some reversionary obligation to the trust.

The court's second expressed reason for appointing the Poulsens was in response to the suggestion that the state be made trustee against its will. The court felt that such an alternative would "provide a neat dodge for any unscrupulous trustor to foist on the State a piece of property that suddenly had become a liability." While the court's concern might be real in other cases, it has no application here. The court expressly noted that it found no reason to suspect such a purpose in this trust. Indeed, the record would not support a suggestion that the Poulsens acted wrongfully. The property they donated to the trust had a substantial value at the time of donation. Moreover, the trust had been maintained for its charitable purposes for nine years before natural circumstances created the potential liability. In any event, if the record disclosed such a wrongful purpose, the remedy would be to declare the trust void. (See 7 Witkin, *op. cit. supra,* § 27, p. 5389-5390.)

This does not mean we are returned to the initial conundrum. There is a legal alternative to requiring an unwilling person to accept responsibility as trustee. ■ Where the original charitable purpose of a charitable trust cannot be fulfilled, a court has broad power under the *cy pres* doctrine to apply the trust property to charitable purposes. (*In re L.A. County Pioneer*

*Society, supra,* 40 Cal.2d at pp. 866-867; *Estate of Gatlin* (1971) 16 Cal.App.3d 644, 650 [94 Cal.Rptr. 295]; *Estate of Faulkner* (1954) 128 Cal.App.2d 575, 579 [275 P.2d 818].)[2] The declaration of trust of the Poulsen Foundation expressed the broadest possible charitable purpose. Under its terms, the trustee was given the power to distribute the entire trust estate for any of the charitable purposes set forth. When circumstances render it infeasible for the trust to retain the real property for trust purposes, it is within the purposes of the trust to sell the property and apply the proceeds to charitable purposes.

■ Assuming the trial court will be no more able than before to find a willing trustee for even this limited purpose, it is within its powers—under its equitable duty to see the trust does not fail—to enforce the execution of the trust though its own officers and agents without the intervention of a new trustee. (See *Batesville Institute* v. *Kauffman* (1873) 85 U.S. 151, 154 [21 L.Ed. 775]; *Rodin* v. *State* (Wyo. 1966) 417 P.2d 180, 199; *Tuttle* v. *Merchant's Nat. Bank* (1896) 19 Mont. 11 [47 P. 203].) To this end, it may appoint a receiver. (See *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 583-584 [283 P.2d 704]; Code Civ. Proc., § 564, subd. 8.) ■ A receiver is an officer of the court possessing the property for the court. *(Pacific Indem. Co.* v. *Workers' Comp. App. Bd.* (1968) 258 Cal.App.2d 35, 40 [65 Cal.Rptr. 429].) Consequently, a receiver is liable in tort solely in an official capacity, not a personal one. *(Sealite, Inc.* v. *Finster* (1957) 149 Cal.App.2d 612, 617-618 [309 P.2d 51]; *Chiesur* v. *Superior Court* (1946) 76 Cal.App.2d 198, 200-201 [172 P.2d 763]). "He is not personally liable for torts committed in the performance of his receivership duties; liability is in his *official capacity* only, to be satisfied from receivership funds." (6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 364, pp. 304-305, italics in original.) Furthermore, a receiver may not be sued without leave of court. *(Ostrowski* v. *Miller* (1964) 226 Cal.App.2d 79, 84-85 [37 Cal.Rptr. 790]; Code Civ. Proc., § 568.) Given these judicial protections, it should be somewhat easier for the trial court to find a willing party to act as receiver in place of a trustee. Such a procedure would fulfill the purposes of the trust without the impermissible consequence of compelling unwilling parties to serve as trustees.[3]

---

[2]*Cy pres* means "As near as practicable; so near." (Ballantine's Law Dict. (3d ed. 1969) p. 302.) "Under the cy pres doctrine, a charitable trust does not fail merely because it becomes impossible, impracticable, or illegal to carry out the purpose of the trust. Rather, if the trustor has expressed a general charitable intent, the court would then direct a disposition of the property to some related purpose in order to carry out the trustor's intention as nearly as possible." (12 Cal.Jur.3d, Charities, § 30, p. 131, fns. omitted.)

[3]Although the issue of compensation for the receiver is not before us, for the guidance of the trial court in this unusual situation we briefly consider it. Normally, compensation for a receiver is payable from the property in receivership. "As a general proposition the costs of a receivership are primarily a charge upon the property in the receiver's possession and

Whether the property can be sold at any price cannot be determined from the record before us. But it does appear that no effort has yet been made to sell it. Under instructions from the court, the receiver, without attempting to sell it, might even manage the property through its time of troubles until such time as a trustee would again be willing to serve. But if the receiver is instructed to sell the trust property and it cannot then be sold, the receiver should manage the property until it can be sold or otherwise disposed of.[4]

The order of the trial court is reversed insofar as it appoints Wayne E. and Gladys K. Poulsen as trustees of the Poulsen Foundation trust. The cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Regan, Acting P. J., and Sims, J., concurred.

---

are to be paid out of said property." (*Andrade* v. *Andrade* (1932) 216 Cal. 108, 110 [13 P.2d 676]; see also 6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 371, p. 309.) The *Andrade* court also emphasized that "this is not an invariable rule. In many cases a direct liability is imposed upon the parties to the action, or upon some of them, for the remuneration of the receiver." (216 Cal. at p. 110; see also *Baldwin* v. *Baldwin* (1947) 82 Cal.App.2d 851, 856 [187 P.2d 429].) But in this case it would not appear appropriate to impose such liability directly on the litigants because they did not seek a receivership, did not create the situation which gives rise to the present legal predicament, and are not parties in the ordinary sense. Consequently, only the property in receivership will be available to defray the costs of receivership. Because the trust property may be worthless, the court may once again experience difficulty in finding a person willing to serve as a receiver. In that case, the court may select a public officer or court official, such as the court administrator, the court investigator, or the public administrator, to act as receiver.

[4]The two parcels donated to the trust by the Poulsens contain no deed restrictions and the declaration of trust provides no restrictions on the use of such property. The parcel donated by the Nature Conservancy contains a right of reentry if the property is not retained in its natural condition. In view of this reversionary interest the trial court may properly require the Nature Conservancy to elect between acting as trustee, exercising the right of reentry, or waiving the right of reentry if such action is necessary for purposes of this trust.