The problems presented to the court arise from this clause in the last will of Catherine Nelson Hart, deceased:
"I here by give my Executor hereinafter named to sell all my stocks — Bond and Money in banks and have it divided equally between Princeton Hospital Princeton New Jersey Hospital and home for cripple children Home and Nursery school for the blind."
The will directs payment of debts and funeral expenses and disposes specifically of jewelry and other chattels. General *Page 124 
legacies totaling $4,350 are followed by the clause which I have quoted. There is no other residuary bequest. Testatrix' gross estate, in addition to the assets which were the subjects of specific bequests, consisted of insurance and miscellaneous assets inventoried at $3,500, and in addition, savings accounts, money in safe deposit box and stocks and bonds.
The will is in testatrix' handwriting. The paragraph under consideration seems carelessly drawn. Note what appears to be the unintentional omission of the word "power" in the first line, the singular noun "bond" instead of the plural, the inaccurate naming of the beneficiaries, the lack of punctuation, and the erratic use of capitals. Much weight cannot be given to the assumption that the words which are descriptive of the gift, were deliberately chosen because of the exact meaning of each word. "Money" is an elastic term, but "money in banks" cannot be given a very broad significance. A bond, in a technical sense, is a sealed obligation, but often the word is used for an unsealed instrument. Stock usually means shares in the capital of a corporation or the wares of a business man, but formerly it was the common term for evidences of government debt.
The gift of "stocks — Bond and Money in banks" may, perhaps, be considered a specific legacy of all the assets except jewelry and the like, and except insurance and miscellaneous, $3,500. Under such a construction, debts, funeral and administration expenses, and the specific gifts, including this one, would exhaust the entire estate, leaving nothing with which to pay general legacies. Or, if money in the safe deposit box in the Fidelity Union Trust Company be not included in the term "Money in banks" and the gift be narrowed accordingly, decedent died intestate as to about $7,000 of her estate. Neither construction is satisfactory. The general frame of the will, the presumption that testatrix intended her general legatees to have part of her estate and that she intended to dispose of all her estate, lead me to the conclusion that the clause in question should be construed as a general gift of the residue of the estate.
Two of the residuary legatees are the Princeton Hospital of Princeton, New Jersey, and the Hospital and Home for Crippled *Page 125 
Children, a well-known institution of Newark. The third legatee is designated in the will "Home and Nursery school for the blind."
About twenty-five years ago, there was given to the International Sunshine Society, a corporation, a large residence in Summit, and here the society established a home and nursery school for blind babies. The institution was widely publicized through the newspapers, by appeals for funds, and in other ways. It was commonly called the Arthur Home for the Blind or the Blind Babies Home at Summit. But the funds of the society proved insufficient. In 1942, two years before the date of Miss Hart's will, it closed the Arthur Home and discontinued all activities. It has, however, some endowment and intends in the near future to employ a visitor who will work under the direction of the Department of Institutions and Agencies of the State of New Jersey. The society does not contemplate reopening the Arthur Home.
The name of the society was changed in 1929 to Arthur Sunshine Home and Kindergarten for Blind Babies. In 1941, there was another change in the title, the substitution of "Nursery School" for "Kindergarten."
The testatrix was a life-long resident of Newark. While her name does not appear to have been on the mailing list of the society, or to be included among the contributors to its work, there is evidence that she had visited the Arthur Home at Summit, only a few miles from Newark. The Department of Institutions and Agencies has no record of any other nursery school for the blind in the state than the one which was operated by the society, and there is no charitable corporation or voluntary association with a name containing "Home and Nursery School for the Blind," or the like. There is little doubt but that testatrix had in mind either the defendant society or the home which it had operated in Summit.
A legacy to a religious or charitable corporation is taken by implication, as intended to promote the purposes for which the corporation is created. If there be no indication to the contrary, the donee may employ the fund for any of the objects which are mentioned in its constitution or charter. AmericanBible Society v. American Tract Society, 62 N.J. *Page 126 Eq. 219. The gift does not lapse if the donee corporation is still in existence when the time for vesting arrives, even though the corporation meanwhile has become entirely inactive. It may take the legacy but must devote it to some proper corporate purpose. Old Colony Trust Co. v. Third Universalist Society
(Mass.), 188 N.E. Rep. 711; 91 A.L.R. 837. In another category is a gift to carry on a particular, existing religious or charitable work. Except where another donee is named, the gift goes to the society which conducts the work; but the fund must be devoted to the particular work, rather than the general purposes of the corporation. For instance, a bequest for the Sunday school, conducted by a church corporation; or a home for the aged, maintained by an association having broad powers. Mason'sExecutors v. Trustees of M.E. Church at Tuckerton, 27 N.J. Eq. 47;German Pioneer Verein v. Meyer, 70 N.J. Eq. 192; 72 N.J. Eq. 954.
Although the corporate donee has not been dissolved, such a legacy lapses, if the work has been abandoned and is not about to be resumed, unless the legacy is saved by the cy pres
doctrine. Crane v. Morristown School Foundation, 120 N.J. Eq. 583.
Whether the object of testator's bounty is the charitable corporation itself, or the work which it conducts, depends on the construction of the will. Usually the question does not arise, since both the corporation and the work still continue and the purpose for which the corporation was formed is limited to the particular work. For example, I need not consider whether Miss Hart's gift to the Princeton Hospital was intended for the enterprise of that name or for the corporation.
The purposes for which the Arthur Sunshine Home and Nursery School for the Blind is chartered are numerous:
"To incite its members to the performance of kind and helpful deeds; to organize branches in various States and territories and all parts of the world; To publish an official organ and circulate the same to members of the Association and others; to contribute money and useful articles to the needy and sick; To maintain control and operate buildings, hospitals, sanitariums and rest homes and other like institutions, nurseries and kindergartens, playgrounds, wherein members of the Association and all other well-recommended persons not members of the Association may be fed, cared for and lodged from *Page 127 
time to time, either with or without pay; To establish relief corps in time of war, famine, pestilence or catastrophe, and thus to bring the Sunshine of happiness into the greatest possible number of hearts and homes; To establish and maintain a department for the blind; to investigate the need of institutions for the care, maintenance and education of blind children from birth to school age, and, when desirable, without reference to age, and to establish and maintain such institutions in each and every State and in the territories, colonies and possessions of the United States, and in all foreign countries and places; To aid the blind, young or old, in any way and through any method that from time to time should prove necessary or desirable."
If the corporation is Miss Hart's legatee and is at liberty to use the fund for any of these purposes, the money may be devoted to publishing the official organ of the society and circulating it among its members in order to incite them to the performance of kind and helpful deeds. I am quite sure Miss Hart had no such intent. Were it not for the circumstance that the Home and Nursery School in Summit had been closed before she made her will, I would say without hesitation that she wanted her money devoted to that particular institution. That was the only branch of the work of the society with which it appears she was familiar and it was also the work indicated by the words found in her will, "Home and Nursery school for the blind." Had she used the correct corporate title, Arthur Sunshine Home and Nursery School for the Blind, that would have been some indication that she intended to benefit the corporation itself for the promotion of any of its purposes, but she did not do so. Miss Hart may not have known that the home was closed, or she may reasonably have assumed that it was shut down temporarily and would be reopened after the war. I conclude that her legacy was given to carry on the work in Summit. Since the work which she intended to assist has been definitely abandoned, the legacy lapsed, unless it can properly be devoted to some similar work.
Where a gift is made for a charitable purpose which, either originally or in the course of time, cannot be literally executed, the gift will not fail, if the court can ascertain the primary object of the testator and finds that it can be given effect by sacrificing the particular means selected by the testator for accomplishing this object. The gift will *Page 128 
be applied as nearly as may be to the donor's intention.MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652,672; Nichols v. Newark Hospital, 71 N.J. Eq. 130; Inre Young Women's Christian Association, 96 N.J. Eq. 568. On the other hand, the gift fails where the method prescribed is of the essence of testator's intention and that method has become impractical; or as it is sometimes expressed, testator had no general charitable intention. Raque v. City of Speyer, 97 N.J. Eq. 447.
But the tendency is for the court to consider what would be accomplished were the charitable gift executed in all respects as testator directed, and to hold that the accomplishment of that result was the real object of testator, and all else secondary.
At the Arthur Home, fifteen or twenty small blind children at a time were sheltered, fed, clothed, cared for, and taught to eat, to dress themselves, to make their way around the house and grounds, to play, to do all those simple things that we, to whom light has not been denied, do without thought or effort. They were not kept at the home after reaching school age, but were returned to their parents, or sent to private homes that had been found for them. The proofs do not disclose whether or not the babies received into the home generally came from families where they were unkindly treated, or where poverty prevented proper care. But most of the emphasis falls on what the children were taught, and their progress in learning to care for themselves. During the past twenty-five years or so, the trend of expert opinion has run against institutional homes of all kinds — for orphans, paupers, aged — and in favor of caring for them in their own or other private homes. About 1934, the society, the Arthur Sunshine Home and Nursery School for the Blind, adopted a program of extension service, although lack of funds made it of little effect. They planned to care for blind babies in the homes of their parents, training not only the child but teaching the mother, so that the child could take place with his brothers and sisters, and make friends, and grow up a part of the community.
Miss Hart's charitable aim was to help the work for blind babies which the Arthur Home was doing. She probably had *Page 129 
in mind the physical part, the shelter, the food, the clothes, as well as the preparation of the children to lead a life as nearly normal as could be. If so, her whole purpose cannot be accomplished. It is impracticable either to reopen the Arthur Home or to establish a similar home with the fund she has provided. But this should not lead to the entire frustration of her charitable intention. With the money she has provided, a number of blind babies year after year can be given a chance for a useful and happy life.
Now as to the agency for performing this work. Testatrix, by implication, expressed her confidence in the corporation, the Arthur Sunshine Home and Nursery School for the Blind, by choosing its institution for her gift. The court has no reason for considering her confidence to be misplaced. The fund should be paid to the society, not, however, for whatever purpose within its charter the corporation may choose, but the fund must be devoted to blind children of pre-school age within the State of New Jersey. *Page 130