Isenbergh, S.
The executors of the last will and testament of Mary Josephine Hare, deceased, who died on November 3, 1954, have filed a petition in their accounting proceeding in which they seek a construction of paragraphs VIII and IX of the last will and testament of George L. Hare, deceased, a brother of Mary Josephine Hare.
’ George L. Hare died on the 18th day of March, 1930, and, by paragraph VTII of his last will and testament, bequeathed his residuary estate to his sisters, Jessie H. Hare and Mary *115 Josephine Hare, or the survivor of them, to use and enjoy the income therefrom during their lives or the life of the survivor of them, with a direction to them, or the survivor of them, to invade the principal. Mary Josephine Hare was the survivor. It seems that she did, slightly, invade the principal. She, however, kept the residuary estate received from her brother separately from her own funds and, in this accounting, the assets set forth in Schedule I denote that residuary estate in the amount of $224,236.93. In the same paragraph of the will of George L. Hare he directs that whatever principal and undistributed income shall be left upon the death of the survivor shall be distributed, in various fractions of the common denominator twenty, to seven charitable, religious or educational institutions. One of the said institutions, namely, the Troy Times Fresh Air Fund of Troy, New York, was to receive a one-twentieth share, upon the death of Mary Josephine Hare. It is with this bequest that we are now concerned by reason of paragraph IX of the will of George L. Hare which reads as follows: ‘ ‘ IX. If any one of the institutions named in said paragraph VIII ’ be not in existence at the time that the bequests to them are to take effect, then I direct that its share shall go equally to the other institutions which shall be in existence, but subject nevertheless to this provision: If one of such institutions be at such time merged with another institution, the institution formed by such merger shall take the share bequeathed to the institution named as beneficiary.”
Six of the institutions named as residuary legatees were represented by counsel on the return day of the citation. The Troy Times Fresh Air Fund was not so represented.
The attorney for the executors produced Charles F. Anderson, the last secretary of the Troy Times Fresh Air Fund who testified in substance as follows: the Troy Times Fresh Air Fund was founded in the 1800’s as a charitable organization, its purpose being to give undernourished and underprivileged children an opportunity to have a vacation in the country in the summertime. Funds were received for its operation by contributions from interested people in this vicinity. Its land and buildings were situated in Grafton in this county. The organization continued its work until about 1942, when it had difficulty securing funds and it then discontinued its operation. The premises in Grafton were sold and its creditors paid. Since that time it has neither solicited nor received funds. It has conducted no children’s program and the only asset in its possession is about $200 to be used for any expense incidental to its *116 formal dissolution. There have been no meetings of its officers or directors and Mr. Anderson does not know where the minute book or the records of the corporation can be found; that, although the corporation has never been legally dissolved, it has performed none of the functions for which it was organized since the sale of its real property and it has no use for money; that some of the officers and Mr. Anderson himself have requested its attorney to dissolve the organization; that any contribution that might be received would have to be returned as there would be no purpose for which that could be used.
Mr. Anderson’s testimony was uncontroverted and must be considered to have given the true picture of the state of the corporation at the date of the death of Mary Josephine Hare. These facts narrow the construction to two questions, namely: (1) What was the intention of the testator? (2) What did he mean by the words, “ Be not in existence at the time that the bequests to them are to take effect ”?
The first question may be answered by a reading of the entire will and considering the state of mind of the testator at the time he drew his will. Since time immemorial the cardinal rule in the construction of wills is to arrive at the intent of the testator as expressed in the instrument, in the light of the surrounding circumstances. (Matter of Thompson, 274 App. Div. 49, 54.)
All of the corporations in paragraph VIII were charitable organizations doing a splendid work in this community. In order to include the Troy Times Fresh Air Fund we should assume that he was well acquainted with its work. He must have been interested in the youth of our community because other organizations, such as the Troy Orphan Asylum of Troy, New York, and Troy Boy Scouts of Troy, New York, were included in his bequests, their work being devoted only to the welfare of the boys in this community. The solicitations for funds by the Troy Times Fresh Air Fund were a matter of common knowledge to the citizens of Troy, as the names of the contributors were published in the Troy Times, a daily newspaper, as contributions were received.
His desire was first to provide for his sisters and then to help the organizations enumerated in paragraph VTII of his will with any funds that might remain after his sisters had been properly cared for. Knowing his sisters, he felt sure that the moneys bequeathed to them for life with a power, of invasion would not be completely used up by them, so he made provision for the distribution of the remainder at the death of the survivor.
*117 The intent of the testator on that point seems clear. He was looking into the future when he decided to provide in paragraph IX that if any of the corporations be not in existence at the time the bequests to them are to take effect, then its share shall go equally to the other institutions which shall be in existence.
The testator was an employee of a banking institution which had a large trust department. In his daily work he necessarily became familiar with the manner in which many bequests in wills lapsed or failed. This was not going to be so in his case, and he provided that only those in existence were to receive their bequests. Certainly, one that was not able to carry on its functions and perform its special kind of work as he saw it performed in his lifetime was not to receive any of his money. His intention was that his money be used to perform the work which impressed him so much that he was giving part of the fruit of his lifetime of labor to it. What other purpose could he have had in mind ? Must we not attribute to him the intelligence of any person that money is of no use to a defunct charitable institution? Constructions of wills, using phraseology such as this, are not novel and there are many decisions in recent years which throw much light on the question now before the court.
Surrogate Foley, in Matter of Walter (150 Misc. 512, 513), held a bequest to the St. Mark’s Hospital of an aliquot portion of the residuary estate to be ineffectual. The institution had filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. It discontinued the operation of its hospital and clinic and entirely ceased to function. In part, his opinion was as follows: “ It is not necessary that the corporation be judicially dissolved to make the gift ineffectual. It is sufficient if the charitable purposes for which it was formed cannot be carried out.” (Citing Matter of Mills, 121 Misc. 147.)
The meaning of the term, “ in existence ” may be paralleled by the wording in a will construed in Matter of Cromwell (198 Misc. 114), where the phrase, “ should not be in existence or be not functioning at the time of my decease ” was used (p. 115). There, one of the legatees, the American Society for Russian Relief, Inc. named in the will adduced facts showing it had $59,000 in the bank and that it had continued to make shipments of goods abroad. The amount of business, however, was practically nothing compared to what the organization had been doing in the testator’s lifetime. Judge Fbankenthalee held that the society was not functioning within the meaning of the *118 will at the time of the testator’s death. Again, in a very recent case, Matter of Scott (1 Misc 2d 206), where a bequest of one third of the residuary of a trust estate was given to an institution devoted to the care of tuberculosis patients, it was established that, at the time of distribution the corporate existence of the institution continued, but it owned no real property, maintained no staff and had no patients, and that the amount of the legacy would fall short of the sum required to put the institution on a basis which would enable it to render adequate care of the kind which it had provided during the lifetime of the testator. The conclusion of the court was,11 that the named legatee is not qualified to receive the gift of the remainder ” (supra, p. 209).
The courts have continually supported the theory that charitable institutions which are not functioning are not the proper recipients of bequests given to them to carry out the work for which they were formed. (Matter of Brundrett, 87 N. Y. S. 2d 851; Matter of Shelton, 87 N. Y. S. 2d 853.)
There can be no question that the Troy Times Fresh Air Fund could not use the bequest given to it to carry on the charitable work for which it was formed. It would have no use for the money. The receipt of the bequest by it would defeat the intent of the testator. The only conclusion that the court can reach in view of the facts presented is that the Troy Times Fresh Air Fund was not in existence at the time its bequest was to take effect, and that the testator’s intention in making this bequest cannot be effectuated.
. It having been determined that this bequest to the Troy Times Fresh Air Fund is ineffectual by reason of the fact that it was not “ in existence ” at the time said bequest was to take effect, it is the decision of this court that said share shall go equally to the six other institutions named in paragraph VIII in accordance with the provisions of paragraph IX of the will.
No question has been raised as to any other item of the account and a decree may be submitted settling the account, at which time commissions will be determined and provision will be made for allowances to the attorneys appearing in this proceeding.