85 Cal.App.3d 942 (1978)
151 Cal. Rptr. 20
Estate of JAY KLINKNER, Deceased.
TITLE INSURANCE AND TRUST COMPANY, as Trustee, etc., Petitioner and Respondent,
v.
SS. PETER AND PAUL CONGREGATION, Claimant and Appellant;
CONNIE COZENS et al., Claimants and Respondents.
Docket No. 52673.
Court of Appeals of California, Second District, Division Five.
October 23, 1978.
*944 COUNSEL
Brandlin & McAllister and Ray E. McAllister for Claimant and Appellant.
No appearance for Petitioner and Respondent.
Stockdale, Peckham, Estes, Ramsey, Lawler & Iorillo, Jack G. Magnus and Michael Schnoeblen for Claimants and Respondents.
OPINION
STEPHENS, J.
Appellant, SS. Peter and Paul Congregation, appeals from an order of the trial court determining that it had ceased to exist for purposes of taking a percentage share of the residuary estate of Jay Klinkner.
The facts underlying the appeal are not in dispute.
Jay Klinkner died on February 23, 1961, having previously executed a will in which he created an express trust of the residue of his estate. *945 Under the terms of the trust, the testator's wife, Thelma, was given a life interest in the income of the residue. It was further provided that, "[u]pon the death of my wife, THELMA, the said Trust shall terminate and distribution shall be made as follows: 20 per cent of the distributable estate to my foster niece, LUCILLE LEIS; 20 per cent thereof to the daughter of my wife by a previous marriage, to wit, CONNIE COZENS; and 20 per cent thereof to ST. PETER AND PAUL CHURCH, Cashton (Pine Hollow), Wisconsin. The rest and residue of my estate, to wit, 40 percent of the distributable estate, to the LOS ANGELES ORPHAN ASYLUM, also known as MARYVALE. If any of the individual remaindermen be then deceased, or if any of the other remaindermen be then not in existence, then and in that event such share and shares shall be distributed amongst the other heirs in the proportion in which they are to take under the terms of this Will."
The designated trustee under the will made a "Twelfth and Final Annual Report and Account," during which it petitioned the court for instructions concerning the distribution of the residue of the estate. In the petition, the trustee alleged that prior to the termination of the trust occasioned by the death of Thelma Klinkner on September 13, 1974, Lucile Leis had become deceased and that appellant having been dissolved as a canonical entity, ceased to operate actively as a church.
Appellant filed a statement of interest in conjunction with the petition, to which it attached the declaration of Frederick W. Freking, the then incumbent bishop of the diocese in which appellant was located. In his declaration, the bishop stated that appellant was created as a canonical entity under the authority of the Catholic Church and incorporated as a religious corporation under the laws of the State of Wisconsin on August 27, 1917. As a legal entity, the bishop indicated that appellant had continued as a Wisconsin corporation in good standing. A certificate from the Secretary of State of Wisconsin to that effect dated August 4, 1976, was introduced as an exhibit. However, due to changing conditions which caused its school and church to become "more and more obsolete" and which resulted in a "community development of local commerce and industry" away from Pine Hollow, appellant was dissolved as a canonical entity on September 20, 1964. No further church services were conducted by members of appellant's congregation after the date of dissolution. Appellant's properties were sold and the proceeds of the sale, together with other assets of appellant were turned over to the Sacred Heart parish also located in the village of Cashton. The bishop estimated that approximately 90 percent of the former parishioners of appellant's church *946 joined the Sacred Heart parish and indicated that all Catholic children of the area attended schools operated by the parish.
The attorney who drafted the testator's will, by way of declaration, recounted a conversation in which the testator stated "that although he was not religious, nonetheless, he had lived in Pine Hollow as a boy, that the people living there had never had very much, that he had been back there since and the condition was still the same, that the little church there was a poor church and, therefore, if there was anything left over he wanted to help it out."
The trial court found that for purposes of the will, appellant was not in existence at the termination of the trust and that the doctrine of cy pres was inapplicable so as to save the bequest. Based upon these findings, the court ordered the residue of the estate to be distributed to the Los Angeles Orphan Asylum and Connie Cozens in two-thirds and one-third shares, respectively. The distribution ordered by the court impliedly denied the interest of Lucille Leis, who predeceased the testator's wife. The representatives of Ms. Leis did not contest the court's distribution.
(1a) The only issue on appeal is whether appellant, canonically dissolved and having ceased to function as a church, can be said to have remained in existence for purposes of taking a share of the residuary estate of the testator solely by continuing as a corporate shell.

Conflict of Laws
(2) It is generally held that a gift to a charitable or religious nonprofit corporation is deemed to have been made in trust "`to carry out the objects for which the organization was created.'" (Lynch v. Spilman (1967) 67 Cal.2d 251, 260 [62 Cal. Rptr. 12, 431 P.2d 636]; Estate of Fitzgerald (1923) 62 Cal. App. 744, 750 [217 P. 773].) No technical words or further manifestations of general charitable intent are necessary in order to create such a trust. (Estate of Connolly (1975) 48 Cal. App.3d 129, 133 [121 Cal. Rptr. 325]; see also: Samoan Congregational etc. Church in U.S. v. Samoan Congregational etc. Church of Oceanside (1977) 66 Cal. App.3d 69, 73-74 [135 Cal. Rptr. 793]; Rest.2d Trusts (1959) § 397, com. f., p. 287; 4 Scott, Trusts (3d ed. 1967) § 351, pp. 2797-2798.)
In the instant case, the testator died a resident of California. The assets of the estate available to fulfill the bequest to appellant consisted entirely of real and personal property located within this state. The general rules *947 of conflict of laws governing trusts dictate that the validity and effect of the bequest to appellant be determined under the laws of California. (12 Cal.Jur.3d, Conflict of Laws, § 64, pp. 550-551.) (3) However, with respect to the validity of trust provisions of moveables created by will, such a "trust will be upheld if it is valid under either the local law of the state of the testator's domicil at death or the local law of the state where the trust is to be administered, provided that this would not be contrary to the strong public policy of the state of the testator's domicil at death." (Rest.2d Conf. of Laws (1971) § 269, com. g., p. 156; Farmers and Merchants Bank v. Woolf (1974) 86 N.M. 320 [523 P.2d 1346, 1348].) (4) The bequest to appellant in trust for its charitable purposes would be administered in Wisconsin, and under the Restatement rule, the validity of such a bequest could be upheld under the law of that state.
However, the issue raised by the present appeal has not been decided by the courts of California or of Wisconsin. Resolution of the issue requires resort to the decisions of other jurisdictions. Therefore, the potential conflict of laws problem is rendered insignificant. (American Center for Education v. Cavanar (1978) 80 Cal. App.3d 476, 487 [145 Cal. Rptr. 736].) In any event, since no Wisconsin statute or decision covering the issue on appeal has been cited, and we have found none, we are entitled to assume that the law of Wisconsin is in harmony with California law. (Lynch v. Surprise Valley Lodge No. 235 (1972) 26 Cal. App.3d 265, 270 [103 Cal. Rptr. 1]; Bierl v. McMahon (1969) 270 Cal. App.2d 97, 101 [75 Cal. Rptr. 473].)

Appellant was not in existence at the termination of the trust and therefore could not take its designated percentage share of the testator's residuary estate
(1b) The testator expressly required the institutional entities under the residuary clause to be in existence at the time of the termination of the trust in order to take their designated percentage share. Failure of the condition worked to divest the entity of its interest. After reviewing numerous cases construing similar clauses in testamentary instruments, the court in In re Estate of Daley (1967) 6 Ariz. App. 443 [433 P.2d 296, 301-302], held that an entity will be deemed to have continued in existence and the bequest to it will be upheld, if the charitable purposes of the testator can be carried out. As stated earlier, where a testator gives property to a charitable corporation, without any declaration concerning the purposes to which the property is to be put, such property is held in trust "to carry out the objects for which the organization was created." *948 Thus, under such circumstances, the question of whether the charitable purposes of a testator can be carried out is actually one involving inquiry into whether the corporation is in such a position so as to be able to accomplish the objects for which it was created. The cases cited within the Daley opinion evidence a split in authority among the various jurisdictions over that question. (This split was noted in Annot. 91 A.L.R. 840, 841: "Legacy or devise to religious or other society as affected by discontinuance of its active functions, or its merger or association with other organization.")
Cases represented by Old Colony Trust Co. v. Third Universalist Soc. (1934) 285 Mass. 146 [188 N.E. 711], hold that a charitable corporation, unless formally dissolved as a legal entity, continues in existence for purposes of taking under a will notwithstanding that it has entirely ceased functioning. (See also: Pearson v. First Congregational Church of Joplin (Mo. App. 1937) 106 S.W.2d 941, 944; Rowe v. Davis (1946) 138 N.J. Eq. 122 [47 A.2d 36, 39]; Old Colony Trust Co. v. Winchester Home (1949) 324 Mass. 258 [85 N.E.2d 622, 623].)
On the other side, there is a line of authority holding that continued corporate existence is not of controlling significance. (In re Walter's Estate (1933) 150 Misc. 512 [269 N.Y.S. 400, 401]; In re Hare's Estate (1955) 1 Misc.2d 114 [149 N.Y.S.2d 428, 432]; In re Dunton's Will (1961) 28 Misc.2d 939 [214 N.Y.S.2d 157]; Bancroft v. Maine Sanatorium Ass'n (1920) 119 Me. 56 [109 A. 585, 591]; First Universalist Soc. of Bath v. Swett (1952) 148 Me. 142 [90 A.2d 812, 814].) These courts have construed similar clauses to that found in the instant case as requiring, unless contrary intent is shown, that the corporation be functioning as of the effective date of the gift.[1] (In re Harrington's Estate (1949) 151 Neb. 1 [36 *949 N.W.2d 577, 582]; In re Hare's Estate, supra, 149 N.Y.S.2d 428, 432; Camden Trust Co. v. Christ's Home of Warminister, Pa. (1953) 28 N.J. Super. 466 [101 A.2d 84, 85].) As stated in In re Hare's Estate, supra: "The Courts have continually supported the theory that charitable institutions which are not functioning are not the proper recipients of bequests given to them to carry out the work for which they were formed." (Id., at p. 432; see also: In re Mill's Will (1923) 121 Misc. 147 [200 N.Y.S. 701] [medical college and hospital, property lost by foreclosure]; In re Brundrett's Estate (1940) 87 N.Y.S.2d 851 [hospital adjudicated bankrupt, ceased operating]; In re Shelton's Estate (1942) 87 N.Y.S.2d 853 [cessation of charitable and religious functions]; In re Scott's Estate (1955) 1 Misc.2d 206 [145 N.Y.S.2d 346] [sanatorium owned no property, maintained no staff and had no patients]; State v. Van Buren School Dist. (1936) 191 Ark. 1096 [89 S.W.2d 605] [educational institute ceased functioning as unit, though trustee acted from time to time]; Garner v. Home Bank & Trust Co. (1937) 171 Tenn. 652 [107 S.W.2d 223] [college insolvent].)
Courts in California, though not in cases directly involving the issue on appeal, have indicated a tendency to minimize the importance of an organization maintaining its corporate existence. In Wheelock v. First Presb. Church (1897) 119 Cal. 477, 483 [51 P. 841], the court stated: "[I]ncorporation [of religious bodies] is only permitted as a convenience to assist in the conduct of the temporalities of the church. Notwithstanding incorporation the ecclesiastical body is still all important. The corporation is a subordinate factor in the life and purposes of the church proper." (See also Estate of Scrimger (1922) 188 Cal. 158, 166 [206 P. 65].)
Although as stated in In re Estate of Daley, supra, 6 Ariz. App. 443 [433 P.2d 296, 300]: "We find no requirement in law or equity that a corporation be in the same position to accomplish its purposes before it receives funds through a will as it will after it receives the funds," the rule requiring a corporation to be functioning affords greater assurance that the testator's charitable purposes will be carried out. Typically, a testator is motivated to give his bequest based on the performance of the organization during his lifetime. (E.g., In re Hare's Estate, supra, 149 N.Y.S.2d 428.) Implicit in the rule requiring more than mere corporate existence is the judicial reluctance to engage in speculation on whether the inactive corporation can, with the bequest, reestablish operations similar to that which existed during the testator's life. (In re Harrington's Estate, supra, 36 N.Y.S.2d 577, 583.) In any event, appellant failed to *950 introduce any evidence on whether with the bequest it could reestablish its church.
Moreover, in the instant case, not only has appellant ceased functioning, but in addition to having been dissolved as a canonical entity, appellant has lost its authority to function as a church. Even if given the bequest designated in the testator's will, appellant could not use it "`to carry out the objects for which the organization was created.'" (Lynch v. Spilman, supra, 67 Cal.2d 251, 260.) "`[T]he Roman Catholic Church is a Christian church, organized not for profit but for religious purposes and to promote the worship of God and to administer to the spiritual needs of mankind and to bring mankind under the influence of religion, ...'" (Estate of Fitzgerald, supra, 62 Cal. App. 744, 749.)
Similarly, in Sleeper v. Camp Menotomy, Inc. (1967) 352 Mass. 47 [223 N.E.2d 696], the testatrix made several legacies to the "Arlington Girl Scouts of Arlington, Massachusetts." Girl scouting in the town had been conducted by Arlington Girl Scouts, Inc. Pursuant to a reorganization of local councils, Arlington Girl Scouts, Inc., had its charter revoked and thereafter ceased to have the authority to conduct girl scout activities. The Mistick Side Girl Scout Council, Inc., became the only organization that had authority to conduct girl scouting in Arlington. Arlington Girl Scout, Inc., changed its name to Camp Menotomy, Inc. Both Mistick and Menotomy claimed the legacies under the will. Menotomy contended that it was entitled to the legacies based on its corporate existence as the successor of Arlington Girl Scouts, Inc., notwithstanding that it had ceased conducting and could not conduct girl scouting. The court rejected this contention, and in so doing, distinguished Old Colony Trust Co. v. Third Universalist Soc., supra, 188 N.E. 711, and Old Colony Trust Co. v. Winchester Home, supra, 85 N.E.2d 622. Referring to the Old Colony cases, the court stated: "In both those cases it was held that the organizations which were still in existence and in possession of their full corporate powers, were entitled to the legacies even though, since the wills had been executed, they had ceased to pursue their former objectives. When the will spoke, Menotomy had not only ceased to conduct scouting, but its authority to do so had been revoked. Under the policies of the Girl Scouts of the United States of America, the charitable body which controls all girl scouting activity, Mistick has succeeded to the authority which, as the will was executed, was vested in Arlington Girl Scouts, Inc." (223 N.E.2d at pp. 697-698.) Based thereupon, the court affirmed an order giving the legacies to Mistick. (See also State Bank & Trust Co. of Harrodsburg v. Vandyke (1949) 311 Ky. 202 [223 S.W.2d 750] *951 [church dissolved and became extinct]; In re Aker (1964) 21 App.Div.2d 935 [251 N.Y.S.2d 144] [church declared discontinued and abandoned by resolution of parent authority, property sold, held no longer in existence and gift failed].) Thus, appellant not only having ceased functioning as a church, but also lacking the authority to so function was no longer in existence on the date of the termination of the trust and therefore is not entitled to its designated percentage share of the residuary clause.

Cy Pres
(5) "[C]y pres is an equitable power which makes it possible for a court to carry out a testamentary trust established for a particular charitable purpose if the testator has expressed a general charitable intent, and for some reason his purpose cannot be accomplished in the manner specified in the will [citation]; the court, to meet unexpected contingencies, directs the disposition of the property to some related charitable purpose in order to carry out the testator's intention as nearly as possible [citation]." (Estate of Gatlin (1971) 16 Cal. App.3d 644, 648 [94 Cal. Rptr. 295]. Fn. omitted.)
There is a tension between the well established rules of construction that a will is to be construed so as to effectuate the intent of the testator, and that a gift to charity should be effectuated whenever possible. The intermediate concept between these two possible polarities is that cy pres will be applied to save a charitable bequest that has become impossible or impracticable of fulfillment under its original terms only when the testator is found to have had a general charitable intent  that is, when the particular gift is of a generally charitable nature rather than to benefit a specific charitable entity. If the charitable organization is merely the conduit through which the gift is to pass, the gift is general in nature and equity will allow it to be applied cy pres to a closely related charitable purpose. However, when the gift is meant to benefit only the organization named, as may be evidenced by the terms of the will or extrinsic evidence, and that gift has become impossible or impracticable of fulfillment, cy pres is inapplicable, as application of it would serve to frustrate the intent of the testator.
(6), (7) Although we note that the doctrine of cy pres is enjoying a liberalization in many states, including California, we also note that this trend is largely influenced by the efforts of courts to save charitable bequests from noncharitable claimants. (For a succinct discussion of the history and present status of the doctrine, see Gettleman & Hodgman, *952 Judicial Construction of Charitable Bequests: Theory vs. Practice (1976-1977) 53 Chi.-Kent L.Rev. 659.) As discussed below, we believe that the facts of this case militate against application of the doctrine, particularly since the gift-over provided by decedent in the event that the original bequest should fail goes in large part to a worthwhile charity.
After ruling that the bequest to appellant had failed because it had ceased to be in existence, the trial court found the doctrine of cy pres to be inapplicable. The extrinsic evidence that was considered by the court indicates that the testator did not have the requisite general intent. The testator's statements made to his attorney that "the little church there was a poor church, and, therefore, if there was anything left over he wanted to help it out," supports the conclusion that he intended only to benefit the specific institution (a poor church  help it out). Further support for this conclusion is found within the terms of the will itself. While the doctrine of cy pres is applicable to meet unexpected contingencies, it is generally held inapplicable when the testator has anticipated the possible failure of a gift by providing for an alternative disposition of the gift to meet that contingency. (Estate of Thomas Neil (1875) Myrick's Prob. Rep. 79, 80 [primary beneficiary ceased to exist, legacy to second beneficiary pursuant to express gift-over provision, notwithstanding the subsequent incorporation of primary beneficiary by same persons for similar purposes]; In re Loring Estate (1946) 29 Cal.2d 423, 436 [175 P.2d 524]; In re Harrington's Estate, supra, 36 N.W.2d 577, 583; Mississippi Children's Home Society v. City of Jackson (1957) 230 Miss. 546 [93 So.2d 483, 487-488]; Rest.2d Trusts, supra, § 399, com. c, p. 299; compare, Estate of Lamb (1971) 19 Cal. App.3d 859, 867 [97 Cal. Rptr. 46]: "The absence of a gift over is a factor which supports application of cy pres.") Thus, to apply the doctrine of cy pres where, as here, the testator has included a gift over provision would have the anomalous effect of disregarding his intent. (See Prob. Code, § 101.)
In sum we conclude that the trial court was correct in its determination of the will of decedent. A California resident sought to honor those normally the recipients of his bounty, the nearest of kin, albeit by marriage. Far more, he sought to benefit a local California orphanage, the Los Angeles Orphan Asylum. From the expressed concern of the testator with those in distressed circumstances, it appeared clear to the trial court and appears clear to us, that it was not decedent's intent to make a general religious bequest. Rather, his intent was to benefit the particularly entity, though a religious one. His help came too late, the church, as such, had passed out of active existence. Since it is the purpose *953 of the testator we seek to accomplish by construing his will as best we can, it satisfies to follow the lead of the trial court in concluding that the entity in Pine Hollow ceased its existence, particularly as to carrying out decedent's purpose and the enlarged gift to the Los Angeles Orphan Asylum accomplishes the will of this thoughtful man.
Disposition
The judgment is affirmed.
Kaus, P.J., and Ashby, J., concurred.
NOTES
[1] If a charitable organization continues to carry out approximately the same purposes for which it was formed and for which the donor made his gift, the organization is generally held to be entitled to the gift notwithstanding that: (1) it operates under administration, though keeping its separate identity (Boston Safe Deposit & Trust Co. v. Stratton (1927) 259 Mass. 465 [156 N.E. 885]; First Nat. Bank v. King Edwards Hospital Fund (1954) 1 Ill. App.2d 338 [117 N.E.2d 656]; Wesley Home, Inc. v. Mercantile-Safe Deposit & T. Co. (1972) 265 Md. 185 [289 A.2d 337]); (2) it had consolidated or merged into another organization, thereby giving up its separate identity (Bible Institute Colportage Ass'n v. St. Joseph B. & T. Co. (1947) 118 Ind. App. 592 [75 N.E.2d 666]; First National Bank of Kansas City v. Jacques (Mo. 1971) 470 S.W.2d 557; Town of Lee v. Town of Lincoln (Me. 1976) 351 A.2d 554; or (3) its functions under a different name (First American National Bank v. De Witt (Tenn. App. 1972) 511 S.W.2d 698); see also Annot. 152 A.L.R. 1303: "When existence of institution named beneficiary is deemed to have ended, within contemplation of provision in that regard" and Annot. 68 A.L.R.3d 997 "Effect on charitable trust or bequest for particular school or school district, or students or graduates thereof, of change in school or district structure or organization.")