[Civ. No. 4294. Fifth Dist., Oct. 8, 1980.]

Estate of LETA PUCKETT, Deceased.
LENA LEE MYERS, Petitioner and Appellant, v.
BANK OF AMERICA, as Executor, etc., Objector and Respondent.

COUNSEL

Myers, Praetzel & Garety and Wallace S. Myers for Petitioner and Appellant.

Campbell & Farnsworth, Truman F. Campbell and Kenneth C. Farnsworth for Objector and Respondent.

OPINION

PIERSON, J.*—The last will and testament of Leta Puckett, deceased, was filed with the court September 15, 1976. During probate, appellant Lena Lee Myers filed a petition for determination of entitlement to estate distribution. She alleged that as first cousin of decedent, she was the sole heir at law of Leta Puckett and thus was entitled to any intestate property. Bank of America National Trust and Savings Association, executor and trustee under the will, filed objections. The trial court found there was no intestate property and that appellant had no interest in the trust property or income from such property.

The following portions of the decedent's last will and testament are pertinent to this appeal and to the hearing on the petition for determination of entitlement heard April 13, 1978:

(After disposing of numerous items of personal property to various beneficiaries, in which appellant was included, the following dispositions were made.)

"SIXTH: All of the rest, residue and remainder of my estate, both real and personal, and of whatever kind and character and wheresoever situate, I hereby give, devise and bequeath as follows: [¶] To the BANK OF AMERICA, N.T. & S.A., Fresno Main Branch, Van Ness and Tulare Street, Fresno, California, Trustee, in trust for the following uses and purposes and upon the following terms and conditions:

"(1) Said trust shall be known as the PUCKETT MEMORIAL FUND.

"(2) The net income from said trust fund, after the payment of all costs of administration, shall be used to provide one (1) annual one-year scholarship in science, chemistry and/or premedicine to one (1) boy or girl senior at Roosevelt High School, Fresno, California, and one (1) annual one-year scholarship in religion at Chapman College, Orange, California, to a graduating senior at any high school in Fresno County.

---

*Assigned by the Chairperson of the Judicial Council.

"Said recipients to be chosen annually in the following manner: [¶] (a) The Trustee shall appoint three educators with prior experience in selecting students for scholarships, and they shall choose one boy or girl graduating senior from Roosevelt High School, Fresno, California, to receive said scholarship to any college for which the recipient may qualify and may choose to enter. An agreement of any two of said educators shall be sufficient to award said scholarship, which is to be awarded on the basis, primarily, of financial need, further taking into consideration scholastic standing, citizenship, personality, leadership ability, perseverance and resourcefulness.

"(b)  The recipient of the religion scholarship shall be chosen by three (3) Pastors of the First Chistian [*sic*] Church from Fresno County, California. Said Pastors to be appointed by the Trustee. If no recipient is available in any year, the share of the net income of said trust to which said student would be entitled shall remain in said trust and any accrued amounts shall be used to increase said scholarship when a recipient shall be available.

"(c)  All of the net income of said trust estate shall be used and divided equally between the two (2) scholarships annually, after the costs and expenses of administration have been paid.

"(d)  Should any such student's grades fall below the standard set by the college in which said student is enrolled, said scholarship shall terminate as to such student at the end of the quarter or the semester in which such failure occurs and the balance of the funds allotted to such scholarship shall be added to the next scholarship selected for the following year.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .

"EIGHTH: If for any reason contained in Division I, Chapter I, Article II of the Probate Code[1] of the State of California, relating to gifts to charity, any of the provisions herein made for religious or charitable purposes should fail or be declared by a court of competent jurisdiction to be invalid or subject to deduction, then and in that event, I direct that such portion of my estate shall be distributed to the Regents of the University of California."

---

[1]Article 2 of division 1, chapter 1 of the Probate Code, dealing with gifts to charity was repealed by Statutes 1971, chapter 1395, section 1, prior to the execution of appellant's will.

Appellant contends that the net income produced by the trust will substantially exceed the amount to be used for two scholarships per year, and that the excess is intestate property since no provision was made for its distribution under the will. Respondent contends that the doctrine of *cy pres* should apply to dispose of the excess income.

The trial court's findings of fact included: "3. That the testratix' [*sic*] intention was to establish a memorial trust in her name to benefit many young people in obtaining a college education.

"4.   That this intent was a general charitable purpose."

The validity of appellant's case rests upon the applicability of the doctrine of *cy pres* to the testator's will. The doctrine of *cy pres* has been described as follows: "'[*C*]*y pres* is an equitable power which makes it possible for a court to carry out a testamentary trust established for a particular charitable purpose if the testator has expressed a general charitable intent, and for some reason his purpose cannot be accomplished in the manner specified in the will [citation]; the court, to meet unexpected contingencies, directs the disposition of the property to some related charitable purpose in order to carry out the testator's intention as nearly as possible [citation].' [Citation. . . .]" (*Estate of Klinkner* (1978) 85 Cal.App.3d 942, 951 [151 Cal.Rptr. 20], quoting *Estate of Gatlin* (1971) 16 Cal.App.3d 644, 648 [94 Cal.Rptr. 295].)

■   Appellant does not dispute that the property in the present case was given in trust to be applied to a particular charitable purpose. Appellant contends that *cy pres* does not apply because (1) it has not become impossible, impracticable or illegal to carry out the charitable purpose, and (2) the settlor did not manifest a general charitable intent.

In *Estate of Mabury* (1976) 54 Cal.App.3d 969, 985 [127 Cal.Rptr. 233], the court noted that an essential ingredient of the *cy pres* doctrine is the requirement that the specific charitable purpose of the trust has become either impossible or impractical of fulfillment and interpreted this to mean permanent impossibility or impracticality.

Bogert on Trusts and Trustees (rev. 2d ed. 1978) When Cy Pres May Be Used—Impossibility of Execution of Trust, section 438, pages 553-555, views facts such as those presented by the instant case as a type of "impossibility"; "If the income of the charitable trust is or becomes more than sufficient to achieve all the charitable objectives

named by the donor in the manner prescribed by him, cy pres is generally applied to the surplus income, in the discretion of the court, since there is an impossibility of using the income to advance any of the charitable purposes of the settlor."

The specific intention of the testator that the trust income be used for the two scholarships becomes impossible to carry out if the net income of the trust exceeds the amount of money granted for the two scholarships. Whether the scholarships will utilize all of the income in a particular year will depend upon the amount of income and the financial needs of the students in light of the costs of receiving an education. The yearly costs of a college education for a physically handicapped person might exceed one-half of the net income of the trust.

In dealing with the surplus net income of the trust the trial court appropriately considered section 400 of the Restatement Second of Trusts: "Section 400. Application of Surplus. If property is given upon trust to be applied to a particular charitable purpose, and the purpose is fully accomplished without exhausting the trust property, and if the settlor manifested a more general intention to devote the whole of the trust property to charitable purposes, there will not be a resulting trust of the surplus, but the court will direct the application of the surplus to some charitable purpose which falls within the general charitable intention of the settlor."

A proper construction of the will supports the trial court's finding that the testatrix had a general charitable purpose. Trusts for the advancement of education are charitable in nature. (4 Scott on Trusts (2d ed. 1956) Advancement of Education, § 370, p. 2639; *People* v. *Cogswell* (1896) 113 Cal. 129, 138 [45 p. 270].)

A testator is said to have had a "general charitable intent" when the particular gift is of a generally charitable nature rather than to benefit a specific charitable entity. (*Estate of Klinkner, supra,* 85 Cal.App.3d at p. 951.) The bulk of the testatrix' estate became part of the Puckett Memorial Fund which was intended to provide scholarships in the sciences and religion to two students a year on a continuing basis. If one or both of the scholarships should terminate in a given year because of poor grades, the balance of the funds allotted to that scholarship was to be added to the next scholarship selected for the following year. The testatrix further provided that in the event that any of her gifts to charity should fail for any reason contained in division 1, chapter 1, ar-

ticle 2 of the Probate Code, then the portion that failed was to be distributed to the Regents of the University of California. Although article 2 had been repealed prior to the execution of decedent's will, this provision (par. EIGHTH) is some indication that the testatrix intended that the bulk of her trust estate should be applied for charitable purposes, i.e., education, even if the Puckett trust, or some part of it, should fail.

The objects and purposes of the trust are purely charitable. The elements necessary to invoke the doctrine of *cy pres* are present. The testatrix had a general charitable intent to benefit young people in obtaining a college education. That intent was manifested by establishing the Puckett Memorial Fund and providing that in the event the fund should fail, the trust would be used for education through the Regents of the University of California.

No California cases have been brought to our attention which deal with the disposition of surplus property in a charitable trust.

In a case very similar factually to the instant case, a settlor had directed that only one person at a time should be furnished a college scholarship from certain trust fund income. In *Quinn v. Peoples Trust & Savings Co.* (1945) 223 Ind. 317 [60 N.E.2d 281, 287, 157 A.L.R. 885], the court held that if the income exceeded the amount required for that purpose, the court would apply *cy pres*, probably to furnish scholarships to others.

The ruling by the trial court in the instant case seems to follow the principle of the *Quinn* case. Judge Meyers noted the general rule in other jurisdictions was stated in Annotation (1945) 157 A.L.R. 903, 909: "[W]here the income of a trust fund is directed by a will to be used for certain specific charitable purposes, but at the time of the testator's death it is greater than appears reasonably required for such purposes, the surplus will be directed to be applied to similar purposes."

In *Theological Education Soc. v. Attorney General* (1883) 135 Mass. 285, a testator directed that all of the trust income be applied to aid indigent students of theology at Cambridge and that no beneficiary should receive more than $150 annually. There were not enought students to exhaust the income and the court held that the amount to be paid to each student might be increased. (See Annot. (1979) 96 A.L.R. 3d 954.)

There is authority for the proposition that where the testator has provided certain sums shall be paid to a certain number of persons, and the income is or becomes more than sufficient for the purpose, the court may direct that larger sums be paid to the same number of persons. (*Theological Education Soc.* v. *Attorney General, supra,* 135 Mass. 285; *Hoyt* v. *Bliss* (1919) 93 Conn. 344 [105 A. 699].) On the other hand, in an English case where the income was such that there was more than sufficient funds to pay the designated sums to the designated number of recipients, the court allowed an increase in the number of beneficiaries. (*Attorney-General* v. *Wansey* (1808) 15 Ves. 231.) In *Hoyt* v. *Bliss, supra,* 105 A. at page 702 the court held that in fulfillment of the duty of the trustee to carry out the intentions of the testator as manifested in the will, when surplus income exists greater than that designated to the one student beneficiary, the surplus may be used to support a second student.

Out-of-state decisions and other secondary authority give illumination to the guidelines for proper disposition of the surplus income in the Puckett Memorial Fund. There is no intestate property under the will in the instant case. The trial court, upon proper application, will determine the use of the surplus income applying the *cy pres* doctrine.

Appellant contends that the accumulation of income over that which is required to meet the expenses for the two scholarships per year would be void under section 723 of the Civil Code which states: "All directions for the accumulation of the income of property, except as are allowed by this Title, are void." ■ However, such accumulation of surplus income under the trust would not be void. Income may accumulate for a longer period than that prescribed in section 724 of the Civil Code because charitable trusts are exempt from restrictions pertaining to accumulations. (*Estate of McKenzie* (1964) 227 Cal.App.2d 167, 172 [38 Cal.Rptr. 496, 7 A.L.R.3d 1275]; Civ. Code, § 715.)

The judgment is affirmed.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

A petition for a rehearing was denied November 6, 1980, and appellant's petition for a hearing by the Supreme Court was denied December 4, 1980.

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.