**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190790

Order filed February 10, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, N.A., as Trustee of the William P. Ingersoll Trust under Agreement Dated May 23, 1949, as Restated and Amended, | ) ) ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Fulton County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| CANTON YWCA; W.D. BOYCE COUNCIL; BOY SCOUTS OF AMERICA, INC.; ELK'S CRIPPLED KIDDIE FUND OF READING LODGE NO. 115 BPOE; GRAHAM HOSPITAL; FIRST CHRISTIAN CHURCH; WESLEY UNITED METHODIST CHURCH; FIRST PRESBYTERIAN CHURCH; ST. PETER'S EPISCOPAL CHURCH; TRINITY LUTHERAN CHURCH; THE FIRST BAPTIST CHURCH; FIRST CONGRETA-TIONAL CHURCH; MT. CARMEL BAPTIST CHURCH; THE SALVATION ARMY; AMERICAN RED CROSS; CANTON PARK DISTRICT; GIRL SCOUTS OF CENTRAL ILLINOIS, INC.; and ATTORNEY GENERAL OF THE STATE OF ILLINOIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-19-0790 Circuit No. 18-CH-32 |
| Defendants (Girl Scouts of Central Illinois, Inc., Defendant-Appellant; and Canton Park District, Defendant-Appellee). | ) ) ) ) | The Honorable William A. Rasmussen, Judge, Presiding |

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice McDade and Justice Schmidt concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Trial court properly found that *res judicata* barred claim of successor charitable organization raised nearly 40 years after supreme court ruled that organization's share of income of trust would go to another charitable organization pursuant to trust's gift over provision.

¶ 2    In 1981, the supreme court ordered that the net income of the William P. Ingersoll Trust designated for "Girl Scouts of Canton, Illinois," be distributed to Canton Park District because no Girl Scout troop was in existence in Canton, Illinois. See *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507 (1981) (*Campfire Girls*). In 2018, after receiving a letter from Girl Scouts of Central Illinois, Inc. (GSCI) requesting income from the trust, Plaintiff JP Morgan Chase Bank, N.A. (JP Morgan), as trustee of the William P. Ingersoll Trust, filed an action for instruction regarding the proper recipient of the income payable, under the trust, to "Girl Scouts of Canton, Illinois." Defendant Canton Park District filed a motion for summary judgment based on *res judicata*. The trial court agreed that *res judicata* applied and granted summary judgment in favor of Canton Park District. Defendant GSCI appeals, arguing that it was entitled to receive the income designated for "Girl Scouts of Canton, Illinois." We affirm.

¶ 3                                    BACKGROUND

¶ 4    William Ingersoll created the William P. Ingersoll Trust in 1949 and amended it several times thereafter. He made his last amendment in 1972. The trust provided income to Ingersoll during his lifetime. After his death, the residue of the trust was to be held in perpetuity by the trustee with annual net income distributed to 17 charitable organizations in varying amounts. The trust named First National Bank of Chicago as trustee.

¶ 5        One of the charitable organizations named in the trust was "GIRL SCOUTS OF CANTON, ILLINOIS," which was to receive 5% of the net income of the trust. Another named beneficiary was "CANTON PARK DISTRICT." It was to receive 15% of the net income of the charitable trust "and the portion of the income payable to any of the above organizations which shall cease to be in existence at any time." The trust further provided: "The payments for each of the organizations *** shall continue so long as such organization shall continue in existence."

¶ 6        Ingersoll died in 1973. At the time of his death, there were no Girl Scout troops in Canton, Illinois, and had been none for more than ten years. As a result, First National Bank brought an action for instruction, seeking guidance from the court regarding the gift to "Girl Scouts of Canton, Illinois." The trial court suggested three possible recipients of the Girl Scouts' share: Kickapoo Council of Girl Scouts, Canton Council of Campfire Girls, Inc., and Canton Park District. The trial court applied the doctrine of *cy pres* and ruled that the income designated for "Girl Scouts of Canton, Illinois" should be distributed to Campfire Girls of Canton.

¶ 7        The Kickapoo Council of Girl Scouts appealed, and the appellate court reversed, finding that the Kickapoo Council of Girl Scouts was "the intended beneficiary of the share of income in question under the Ingersoll trust." *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 81 Ill. App. 3d 932, 938 (1980), *rev'd*, 85 Ill. 2d 507 (1981). Canton Park District appealed, and the supreme court reversed, holding that Canton Park District was entitled to the Girl Scouts' share, stating: "It is clear that the organization intended to receive the gift does not exist." *Campfire Girls,* 85 Ill. 2d at 519. In its decision, the supreme court stated:

        "The charitable beneficiaries of the trust would receive no income therefrom until after the death of the settlor. In the event the Girl Scout troops were again organized in Canton before that event, the gift would not fail. Inasmuch as this did not occur

3

and the group intended to be benefitted by the gift did not exist when the gift was to become effective, the gift over to the park district must take effect." *Id.* at 516.

¶ 8 Thereafter, JP Morgan took over as trustee of the trust. In 2017, an attorney representing GSCI sent a letter to JP Morgan asserting that it was entitled to 5% of the net income of the trust because several Girl Scout troops had come into existence and were active in Canton. The attorney also filed a Notice of Attorney's Lien, asserting the existence of an agreement with GSCI for a portion of its recovery and costs if its claim was successful.

¶ 9 After receiving the letter and notice from GSCI, JP Morgan filed an action for instruction. Count I sought instructions from the court regarding the beneficial interest to "Girl Scouts of Canton, Illinois." Count II sought instructions regarding adjudication of the attorney's lien.

¶ 10 Defendant Canton Park District filed a motion for summary judgment, arguing that GSCI's claim failed because (1) it is barred by *res judicata*, and (2) the gift to "Girl Scouts of Canton, Illinois" vested at Ingersoll's death. GSCI filed a cross-motion for summary judgment, arguing that it is entitled to share under the trust because Girl Scouts of Canton, Illinois now exists as GSCI. The trial court issued an order (1) granting Canton Park District's motion for summary judgment based on *res judicata*, and (2) invalidating the Attorney's Lien filed by counsel for GSCI.

¶ 11 ANALYSIS

¶ 12 Summary judgment motions are governed by section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2020)). Summary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law. *Id.* § 2-1005(c). When parties file

4

cross-motions for summary judgment, they agree that only a question of law is involved. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28.

¶ 13 Summary judgment may be granted on the basis of *res judicata*. *Ross Advertising Inc. v. Heartland Bank and Trust Co.*, 2012 IL App (3d) 110200, ¶ 28. We review a trial court's grant of summary judgment *de novo. Id.*

¶ 14 "The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). *Res judicata* has three requirements: (1) a final judgment on the merits, (2) an identity of parties or their privies, and (3) an identity of causes of action. *Deutsche Bank National Trust Co. v. Bodzianowski*, 2016 IL App (3d) 150632, ¶ 17. *Res judicata* will bar a second action when it is "nothing more than a do-over of the first action." See *Turczak v. First American Bank,* 2013 IL App (1st) 121964, ¶ 28.

¶ 15 Once a party establishes a *prima facie* case of *res judicata,* the burden shifts to the opposing party to properly plead the existence of an exception to *res judicata. Bodzianowski*, 2016 IL App (3d) 150632, ¶ 19. Generally, "[t]he rule in Illinois is that *res judicata* extends only to the facts and conditions as they were at the time a judgment was rendered. *Northern Illinois Medical Center v. Home State Bank of Crystal Lake,* 136 Ill. App. 3d 129, 144 (1985)). However, "[w]hen new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties respectfully, the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action." *Id.*

¶ 16    Trusts are construed according to the same principles as wills. See *Campfire Girls,* 85 Ill.2d at 513. The goal in interpreting a trust is to determine the settlor's intent. *Id.* In determining intent, courts consider the plain and ordinary meaning of the words used, taking into consideration the entire document. *Id.* at 514.

¶ 17    Gifts to a charitable organization lapse if the organization dissolves. See *Northern Trust Co. v. Winona Lake School of Theology*, 61 Ill. App. 3d 966, 972 (1978) (citing *Miller v. Riddle*, 227 Ill. 53 (1907); *Mott v. Danville Seminary*, 129 Ill. 403 (1889)). A trust provision stating that net income will be paid to an organization as long as it does not "cease to operate or exist" constitutes a restrictive condition requiring the gift to lapse if the organization stops operating or existing. See *Citizens National Bank of Paris v. Kids Hope United, Inc.,* 235 Ill. 2d 565, 577 (2009). The failure of such a restrictive condition divests an organization of its interest in the trust or estate. See *Estate of Klinkner*, 85 Cal. App. 3d 942, 947 (1978).

¶ 18    "If property is given in trust to apply it to a charitable purpose so long as a certain state of affairs continues, or until a certain event happens, the charitable trust terminates when the designated state of affairs ceases to exist or when the designated event happens." Restatement (First) of Trusts, § 401, comment c (1935). In such a case, if a valid gift over for charitable purposes is contained in the trust, it will take effect. See *id.* at comment c & d. A gift over takes effect if a contingency happens at any time before termination of the particular estate. See *Smith v. Shepard*, 370 Ill. 491, 496 (1939).

¶ 19    Here, the trial court granted Canton Park District's motion for summary judgment based on *res judicata*. Specifically, the court ruled that all requirements of *res judicata* were met because (1) the supreme court's decision in *Campfire Girls* is a final judgment on the merits; (2) the issue

6

in both cases is/was interpretation of the Ingersoll trust; and (3) GSCI is in privity with Kickapoo Council of Girl Scouts, and JP Morgan is the successor trustee to First National Bank of Chicago.

¶ 20 Nevertheless, GSCI argues that the trial court erred in applying *res judicata* because (1) "new facts bar application of the doctrine;" (2) the issue presented here was "not ripe" when the supreme court reached its decision in 1981; and (3) "application of the doctrine results in injustice."

¶ 21 I. New facts

¶ 22 GSCI argues that the trial court erred in applying *res judicata* because facts have changed since the supreme court's decision in *Campfire Girls*, specifically the existence of active Girl Scout troops in Canton. While it is true that Girl Scout troops now exist in Canton, that fact does not "establish a new basis for the claims and defenses of the parties." See *Northern Illinois Medical,* 136 Ill. App. 3d at 144. The supreme court in *Campfire Girls* ruled that Ingersoll's gift to "Girl Scouts of Canton, Illinois" failed because no such entity existed when Ingersoll died and, therefore, the gift went to Canton Park District pursuant to the gift over provision of the trust. See 85 Ill. 2d at 516. No new facts asserted by GSCI in this case change that result. Based on the authorities cited above, once Girl Scouts of Canton, Illinois ceased to exist, it was divested of its interest in income from the trust, and that interest passed to Canton Park District. See *Smith*, 370 Ill. at 496; *Kids Hope United, Inc.,* 235 Ill. 2d at 577; *Klinkner*, 85 Cal. App. 3d at 947; Restatement (First) of Trusts, § 401, comments c & d.

¶ 23 Furthermore, the language of the trust does not support GSCI's position that Girl Scouts of Canton Illinois's interest could somehow be revived nearly 40 years after the supreme court ruled that Canton Park District was entitled to Girl Scouts of Canton, Illinois's share in the trust. The trust provides that the gift over provision applies when an organization "shall cease to be in existence at any time." A plain reading of this provision is that if there is "any time" that an

7

organization ceases to exist, the gift over provision applies and the gift over to Canton Park District takes effect. The trust is devoid of any language reviving an interest in an organization that did not exist at the time of Ingersoll's death.

¶ 24                                    II. Ripeness

¶ 25    GSCI also contends that the issue presented in this case was "not ripe" when the supreme court issued its decision in *Campfire Girls* because the interests of the charitable organizations named in the trust continuously vest annually. Thus, GSCI argues that the interest of "Girl Scouts of Canton, Illinois" had not yet vested when the supreme court issued its decision in 1981 following Ingersoll's death. We disagree.

¶ 26    "[T[he law favors the early vesting of an interest." *Northern Trust Co. v. Knox*, 373 Ill. App. 3d 479, 490 (2007). An interest in an estate will vest "at the earliest possible time." *Id.* The presumption in favor of early vesting of interests applies unless the donor's intention to postpone vesting is apparent from the express provisions of the will or trust. See *Dempsey v. Dempsey*, 342 Ill. App. 3d 969, 975 (2003); *St. Louis Union Trust Co. v. Hearne*, 111 Ill. App. 2d 411, 418-19 (1969).

¶ 27    Here, the supreme court ruled that interests in the charitable beneficiaries vested at Ingersoll's death. See *Campfire Girls*, 85 Ill. 2d at 516. No provision of the trust established an intent by Ingersoll to postpone vesting to a later date. The presumption in favor of early vesting applies. See *Dempsey*, 342 Ill. App. 3d at 975; *Hearne*, 111 Ill. App. 2d at 418-19.

¶ 28                                    III. Justice

¶ 29    Finally, GSCI argues that it would be unjust to apply *res judicata* in this case. We disagree. We find that it would be unjust to allow GSCI to claim an interest in a trust nearly 50 years after the settlor died and nearly 40 years after the supreme court ruled that the gift would go to a different

8

charitable organization pursuant to the trust's gift over provision. Once Girl Scouts of Canton, Illinois ceased to exist, its interest passed to Canton Park District "so long as such organization shall continue in existence." We find no legal authority supporting GSCI's position that Girl Scouts of Canton, Illinois's interest could be revived decades after the settlor died.

¶ 30 For the reasons stated herein, we affirm the trial court's order granting Canton Park District's motion for summary judgment because *res judicata* prevents GSCI from receiving income under the trust.

¶ 31                                                    CONCLUSION

¶ 32 The judgment of the circuit court of Fulton County is affirmed.

¶ 33 Affirmed.