Filed 10/8/14  Urtecho v. Guerrero CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANK URTECHO et al., | B247997 |
| Plaintiffs, | (Los Angeles County Super. Ct. No. EC051322) |
| v. | |
| GABRIEL GUERRERO, | |
| Defendant and Appellant; | |
| DAVID J. PASTERNAK, as Receiver, etc., | |
| Movant and Respondent; | |

APPEAL from an order of the Superior Court of Los Angeles County, William D. Stewart, Judge.  Affirmed.

Roger N. Golden for Defendant and Appellant.

Pasternak & Pasternak and David J. Pasternak for Movant and Respondent.

_____

**INTRODUCTION**

Gabriel Guerrero appeals from an order requiring him to pay a portion of the fees and expenses incurred by a court-appointed receiver, David Pasternak (the Receiver). Guerrero contends he was no longer the owner of the receivership real property when the Receiver was appointed and, therefore, he obtained no benefit from the creation or operation of the receivership. Accordingly, Guerrero argues it was an abuse of discretion to hold him liable for the Receiver's fees. The trial court concluded Guerrero should be charged because the Receiver was appointed to effectuate a conditional judgment concerning disposition of the receivership real property to which Guerrero was a party and beneficiary. We find no abuse of discretion. The order is affirmed.

**FACTS[1] AND PROCEDURAL BACKGROUND**

This appeal arises from a lawsuit by Frank and Leticia Urtecho (the Urtechos) against Guerrero concerning a multi-family residential property that they co-owned (the Property). The Property consists of 15 apartment units in three separate buildings.

On January 28, 2010, the Urtechos and Guerrero entered into a stipulation for settlement, whereby they agreed to sell their joint interest in the Property. The stipulation acknowledged that Guerrero owned 60 percent of the equitable and legal title to the Property, while the Urtechos owned the remaining 40 percent. Guerrero was to have "sole and exclusive power to market the [P]roperty and take such actions as shall be reasonably necessary to consummate a sale thereof for a period of 12 months." The stipulation specified, however, that "if either party receives an offer for the [P]roperty which is less than $1.55 million, both parties shall be required to agree on a sales price." The parties also agreed that Guerrero would remediate "certain non-complying units" to ensure that the Property had 15 legal units in advance of the anticipated sale. The parties

---

[1]    In accordance with the applicable abuse of discretion standard of review (see *Baldwin v. Baldwin* (1947) 82 Cal.App.2d 851, 856 (*Baldwin*)), we state the relevant facts in the light most favorable to the trial court's ruling, and draw all reasonable inferences in support of it. (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 765.)

were to bear the price of remediation according to their respective ownership interests—i.e., 60 percent by Guerrero, 40 percent by the Urtechos. The parties also acknowledged there were delinquent property taxes and agreed to pay the taxes through escrow entirely from Guerrero's share of the sale proceeds.

On July 29, 2010, the trial court entered a conditional judgment pursuant to the stipulation for settlement. (See Code Civ. Proc., § 664.6.) The parties, however, failed to jointly sell the Property in accordance with the conditional judgment. Accordingly, on November 10, 2011, the trial court entered a minute order appointing the Receiver to " 'complete the terms of the Conditional Judgment re sale of [the Property].' " On December 7, 2011, the court entered a formal order of appointment, which Guerrero's attorney approved as to form.

Notwithstanding the terms of the conditional judgment, on June 29, 2011, roughly five months before the trial court appointed the Receiver, Guerrero purported to transfer his 60 percent interest in the Property to a third party, Winfield Schey, by quitclaim deed.[2] Guerrero claimed he was compelled to sell only his interest due to "his difficult financial condition" and because the Urtechos would not consent to Schey's offer to purchase the entire Property for $1.5 million—an amount which, according to the terms of the conditional judgment, required all parties' agreement. At the time of the transfer, Guerrero had not remediated the non-complying units as required by the conditional judgment.

On January 10, 2012, the Los Angeles County Health Inspector inspected the Property and cited it for numerous habitability violations. Though the Receiver attempted to resolve these issues with the limited funds available in the receivership estate, the Health Inspector found ongoing habitability violations when he re-inspected the Property on February 16, 2012.

---

[2]     It is not apparent from the record whether Guerrero advised the trial court of the purported transfer when the court appointed the Receiver.

3

On January 19, 2012, the mortgage lender, Opus Bank, gave notice of its election to accelerate the indebtedness and call the loan. The notice of acceleration asserted the loan agreement had been "breached by transfer(s) of a beneficial interest in the Property without the knowledge or written consent of the Lender and non-payment of Property taxes." Around the same time, the Receiver stopped paying Opus Bank because the receivership estate lacked adequate funds to make the monthly mortgage payments and maintain the Property.

In February 2012, the Receiver requested financing from the Urtechos, Guerrero and Opus Bank to remedy the habitability violations and meet other expenses necessary to properly operate the Property. All refused to provide the emergency funding. At a March 2012 status conference, Schey—the purported owner of Guerrero's interest in the Property—asserted he had the financing to purchase the Urtechos' remaining interest, and that he would be able to close escrow before the end of April. At the status conference, Opus Bank agreed to forbear foreclosure to allow the transaction to proceed. However, contrary to this commitment, on March 16, 2012, the bank recorded a notice of default on the Property. Citing the notice of default as one of its reasons, Schey's proposed lender refused to proceed with the financing.

On April 12, 2012, the Los Angeles Housing Department cited the Property for numerous Health and Safety Code violations, and ordered extensive abatement to be completed by June 11, 2012. At that time, the receiver estimated the abatement costs would total between $30,000 to $40,000. Though the Receiver made efforts to rehabilitate the Property, these efforts were hindered by the lack of funds in the receivership estate and the parties' unwillingness to provide the necessary funds for remediation.

On April 24, 2012, the Housing Department sent another letter notifying the Receiver that the Property was zoned for only eight—not 15—units. Based on a real estate broker's opinion of value, the Receiver determined the Property would be worth significantly less than the existing Opus Bank loan unless the zoning issues could be resolved.

On July 26, 2012, the trial court issued an order directing the Receiver to take no action to halt Opus Bank's trustee's sale of the Property.

On August 2, 2012, the Urtechos filed for bankruptcy. During the pendency of the bankruptcy case, the Receiver remained in possession of the Property with the agreement of the Urtechos' bankruptcy trustee, who prohibited the Receiver from expending funds to improve or maintain the Property. On November 20, 2012, Opus Bank successfully moved for relief from the automatic stay and leave from the bankruptcy court to foreclose on the Property. On December 19, 2012, the Urtecho's bankruptcy case was closed.

On November 2, 2012, the trial court entered an order releasing the Property from the receivership estate and instructing the Receiver to file a final report and accounting. On January 2, 2013, the Receiver filed his final report, wherein he claimed a total of $154,486.89 for all unpaid fees and costs incurred in connection with the receivership. The final report stated $90,236.91 remained in the receivership estate for partial payment of the unpaid fees and costs.

Because the Property had been released from the receivership estate and was not available to satisfy any part of the claim, and because the Urtechos could not be charged with the unpaid fees due to their bankruptcy discharge, the Receiver requested an order requiring Guerrero to pay the $64,249.98 shortfall. Guerrero opposed the claim on the principal ground that he sold his interest to Schey before the Property went into receivership. The Receiver responded that Guerrero was not authorized to sell only his interest in the Property, because the conditional judgment, which the Receiver had been appointed to effectuate, required Guerrero to take such actions as were necessary to consummate a sale of the entire Property.

At the hearing on the final report, the trial court agreed with the Receiver that the conditional judgment was the driving force behind the receivership.~(RT 13)~ Because Guerrero was a party to the conditional judgment, the court held he was responsible for the shortfall in payment of the Receiver's fees and costs.

5

A receiver is an agent and officer of the court, and is under the court's control and supervision. (Code Civ. Proc., § 568; Cal. Rules of Court, rule 3.1179.) The receiver also is a fiduciary who must act for the benefit of all parties interested in the property subject to the receivership. (*Shannon v. Superior Court* (1990) 217 Cal.App.3d 986, 992.)

Receivers are entitled to compensation for their services. (*Venza v. Venza* (1951) 101 Cal.App.2d 678, 680.) Generally, the costs of a receivership are paid from the property in the receivership estate. (See *Andrade v. Andrade* (1932) 216 Cal. 108, 110; *McCarthy v. Poulsen* (1985) 173 Cal.App.3d 1212, 1219-1220, fn. 3.) However, courts also may impose the receiver's costs on a party who sought the appointment of the receiver or apportion them among the parties for whose benefit the receivership was created, depending upon the equitable circumstances presented. (*Stanton v. Pratt* (1941) 18 Cal.2d 599, 603 (*Stanton*); *Baldwin, supra,* 82 Cal.App.2d at pp. 854-855; see also *Ephraim v. Pacific Bank* (1900) 129 Cal. 589, 593 [" 'While the estate in the receiver's hands is the primary fund out of which his proper expenses and compensation are to be paid, if the estate be insufficient or fail, the parties for whom he has acted may be compelled to pay the expense incurred for their benefit.' "].) Trial courts are vested with broad discretion in determining who is to pay the expenses of a receivership, and the court's determination must be upheld in the absence of a clear showing of an abuse of discretion. (*Baldwin*, at p. 856; see *Melikian v. Aquila, Ltd.* (1998) 63 Cal.App.4th 1364, 1368; *People v. Riverside University* (1973) 35 Cal.App.3d 572, 587.)

Guerrero contends it was an abuse of discretion to charge him with paying the shortfall in the Receiver's fees, since he sold his entire interest in the Property five months before the court appointed the Receiver. Because he purportedly had no interest in the Property when the Receiver was appointed, Guerrero argues the receivership was neither created nor operated for his benefit, and he cannot be held liable for satisfying the shortfall. We disagree.

6

As discussed, if funds in the receivership estate are insufficient, the trial court has discretion to impose "liability to pay the expenses and fees of a receivership . . . upon any or all of the parties for whose benefit the receivership was created." (*Stanton, supra,* 18 Cal.2d at p. 603.) Here, though Guerrero purported to transfer his 60 percent ownership interest in the Property to Schey prior to the Receiver's appointment, the trial court reasonably determined that the receivership was nevertheless created and operated for Guerrero's benefit in order to effectuate *his agreement* to jointly sell both his and the Urtechos' interests in the Property as required by the conditional judgment. Indeed, the conditional judgment not only contemplated a joint sale of the entire Property, but it also provided that "*Guerrero* shall have and is hereby granted *sole and exclusive power* to market the [P]roperty and take such actions as shall be reasonably necessary to *consummate a sale thereof . . . .*" (Italics added.) Guerrero acknowledged that he failed to consummate the mandatory sale, due (he claimed) to the Urtechos' refusal to accept Schey's offer to purchase the Property for $1.5 million. Whatever the reason, as the parties were unable or unwilling to settle their differences, the trial court appointed the Receiver to "complete the terms of the Conditional Judgment re sale of [the Property]." In that respect, the Receiver was appointed to ensure Guerrero's commitments under the conditional judgment were met. The trial court reasonably concluded the appointment was for Guerrero's benefit in charging him with responsibility to pay the Receiver's fees and expenses. (*Ibid*.)

Equitable considerations also support the trial court's decision. (Cf. *Baldwin, supra,* 82 Cal.App.2d at pp. 854-855.) As we have discussed, the conditional judgment contemplated the sale of the entire Property—it did not authorize Guerrero to sell only his interest without consummating a sale of the Urtechos' interest as well.[3] Perhaps more

---

[3] Guerrero contends the conditional judgment permitted him to transfer his interest to Schey as his "designee," inasmuch as paragraph 5 of the stipulation for settlement states "Urtecho and Guerrero acknowledge that Guerrero and/or his designee is the majority owner of the property and owns 60% of the equitable and legal title in and to the property." Paragraph 5 is not reasonably susceptible of the interpretation advanced by Guerrero. A "designee" is one "who has been designated to perform some duty or carry

critically from an equities standpoint, Guerrero's transfer not only violated the conditional judgment, but it also caused Opus Bank to accelerate the indebtedness and call the loan, declaring the loan agreement "breached by transfer(s) of a beneficial interest in the Property without the knowledge or written consent of the Lender." The loan acceleration set the stage for Opus Bank to record a notice of default on the Property, which apparently frustrated Schey's efforts to obtain financing. The record also shows that Guerrero failed to remediate the non-complying units before transferring his interest, despite his commitment to do so under the conditional judgment. This, coupled with the fact that neither Guerrero nor the Urtechos would furnish emergency funds, left the Receiver in the unworkable position of trying to maintain a property which, due to its non-complying units, was worth less than the amount owed to Opus Bank on the mortgage. All told, the record amply supports a reasonable inference that Guerrero's inequitable conduct significantly impaired the Receiver's ability to sell the Property at a sufficient profit to cover the receivership fees and expenses. We find no abuse of discretion in the trial court compelling Guerrero to cover the shortfall.

---

out some specific role." (Black's Law Dict. (9th ed. 2009) p. 512.) The term connotes a form of agency relationship where the designee acts on behalf of the one who designated him or her. (See *Hayes v. State Dept. of Developmental Services* (2006) 138 Cal.App.4th 1523, 1531 ["A 'designee' is 'one who is designated or delegated.' [Citation.] To 'delegate' means to send as one's representative."].) Nothing in paragraph 5 or the other terms of the stipulation suggests that the parties intended some other meaning by their reference to Guerrero's "designee." Certainly nothing suggests they intended the term to apply to an unrelated third party like Schey who might purchase Guerrero's interest in the Property separate from the Urtechos' interest.

**DISPOSITION**

The order is affirmed.  Receiver, David Pasternak, is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.

9